## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:  AGRIPROCESSORS, INC.<br>Debtor | Case No. 08-2751<br><br>Chapter 11 |
| SHF HOLDINGS, LLC formerly SHF<br>INDUSTRIES,  INC.<br>Plaintiff | Adv. Proc. No. _____ |
| v.<br><br>ALLAMAKEE COUNTY,<br>Defendant | **COMPLAINT FOR DECLARATORY<br>RELIEF** |

COMES NOW, Plaintiff, SHF Holdings, LLC ("SHF Holdings"), and for its Complaint states as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff, SHF Holdings, is a corporation duly organized and existing under the laws of the State of Iowa with its principal place of business located at 321 East Walnut Street, Suite 200, Des Moines, Iowa 50309.

2.      Defendant, County of Allamakee ("Allamakee"), is a county organized and existing pursuant to Iowa Code Chapter 331 with its county seat located in Waukon, Iowa.

3.      This Court has jurisdiction over the parties to and subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334.  The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code, and Bankruptcy Rule 9014.  In addition, this action is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

1

## FACTUAL AND PROCEDURAL BACKGROUND

5.      On November 4, 2008 (the "Petition Date"), Agriprocessors, Inc. (the "Debtor")

filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

6.      Prior to the Petition Date, the Debtor financed its operations through, among other

things, loans and financial accommodations from First Bank Business Capital, Inc. ("First

Bank").  Such loans and financing arrangements provided First Bank with senior liens and

security interests on all of the Estate's personal property.  At the time the Petition was filed, First

Bank asserted a secured claim in excess of $33 million, plus outstanding interest, fees, expenses

and other charges.

7.      In addition to First Bank, MLIC Assets Holdings LLC ("MLIC") held a senior

mortgage in the amount of approximately $10 million that encumbered the Estate's real property

located at 220 West Street, Postville, Iowa (the "Real Property"), and certain leased equipment

located at the Real Property.  The legal description of the Real Property is attached hereto as

Exhibit 1.

## THE SECTION 363 SALE

8.      On January 25, 2009, the Trustee sought authority to sell the Estate's assets,

subject to higher and better offers, pursuant to Section 363 of the Bankruptcy Code (the "Sale

Motion").  Included in the Trustee's Sale Motion were procedures for bidding and the method by

which notice of the sale and auction would be served on all interested parties and entities.

9.      On February 27, 2009, the Court approved the Trustee's bid procedures and the

form and manner of the notice of the Sale Motion.

10.     On March 23 and 24, 2009, the auction was held.  At the conclusion of the auction, First Bank and MLIC made credit bids for their collateral.

11.     The auction sale could not be consummated under the pending credit bids, and at the Trustee's request, the Auction and Sale Hearing were adjourned to permit additional negotiations, or additional offers, to be solicited and evaluated.

12.     Following the Auction, on or about May 6, 2009, First Bank assigned all of its right, title, and interest in its post-petition credit facility to SHF Holdings.  On or about June 5, 2009, MLIC assigned all of its right, title and interest in and to its loans, including its mortgages, to SHF Holdings.

13.     After acquiring First Bank's and MLIC's interests in the Estate's property, SHF Holdings made an offer to acquire the Estate's assets.

14.     On June 23, 2009, the Trustee filed a supplemental motion requesting the Court reconvene the auction and approve the sale of substantially all of the Estate's assets free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code Section 363.

15.     The Trustee then notified creditors and parties-in-interest that the auction would be reopened and concluded on July 6, 2009.

16.     Plaintiff believes that Allamakee had actual knowledge of the proceedings at each stage of the process.  In addition to Allamakee's knowledge of the proceedings, each stage of the proceedings was widely reported in the media.  Allamakee took no action at any time to protect its interests.

17.     At the auction, Plaintiff credit-bid to purchase substantially all of the Debtor's assets.

18.     On July 20, 2009, following notice and a hearing, this Court entered an order

approving the sale of substantially all of the Estate's assets free and clear of all liens to SHF

Holdings.  *See* Order attached as Exhibit 2.

19.     In its Order, the Court made the following findings: (1) "[d]ue notice of the [Sale]

Motion, the Bid Procedures, the Sale Hearing and the Asset Sale has been given to all parties

entitled thereto;" (2) the property "shall be transferred to the Purchaser at closing, free and clear

of all Claims, with all such Claims released, terminated and discharged as to the Purchaser . . .

and the Assets," (3) "all liens on the [Real Property] shall be deemed divested, void and

unenforceable"; and (4) "all persons and entities holding Claims of any kind and nature with

respect to the Assets or the Debtor are hereby forever barred and permanently enjoined from

asserting such Claims against the Assets and/or [SHF Holdings]".  *See* Order at 12-13, Exhibit 2.

In addition, the Order finds that SHF Holdings has taken all actions "in good faith, and  . . . is a

good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code."  *Id.* at 9.

20.     SHF Holdings relied on the Order and, over the course of the past year, made

significant investments in the Real Property, including updating equipment and generally

cleaning and improving the Property.

<u>THE TAX SALE</u>

21.     Despite this Court's order that the Real Property was sold free and clear of all

liens, on May 3, 2010, Defendant issued a "Notice of Taxes Due and Pending Tax Sale" ("Tax

Sale Notice").  *See* Tax Sale Notice, Exhibit 3.  The Tax Sale Notice alleges that SHF Holdings

is responsible for $570,486.73 in property taxes that were levied on the Real Property pre-

petition, for the fiscal year beginning July 1, 2007 and ending June 30, 2008.  Allamakee has

4

never filed a proof of claim in the underlying bankruptcy and has never moved for relief from

stay to enforce any rights it may have had to collect the taxes prior to the sale approved by the

Court order of July 20, 2009.

22.    Contrary to this Court's order, Defendant is placing the Real Property up for a tax

sale scheduled to be held on June 21, 2010, at the Allamakee County Courthouse.

### REQUEST FOR DECLARATORY JUDGMENT

23.    Based on the Order attached as Exhibit 2 and the above allegations, Plaintiff seeks

a declaration from this Honorable Court that Defendant's tax liens on the Real Property are void

and unenforceable pursuant to its Order and that Defendant is forever barred and permanently

enjoined from asserting such claim against the Real Property.

WHEREFORE, SHF Holdings prays that this Honorable Court enter an Order:

A.    Declaring that Allamakee County's tax liens on the parcels of property specified

on the Tax Sale Notice attached hereto as Exhibit 3 are void and unenforceable;

B.    Declaring that any sale by Allamakee County of the property specified on the Tax

Sale Notice be declared null and void;

C.    Declaring that Allamakee County is forever barred and permanently enjoined

from attempting to enforce its tax liens against the Real Property;

D.    Declaring that the Real Property is free and clear of all liens and claims by

Allamakee County;

E.    Declaring that Allamakee County must reimburse SHF Holdings for all costs and

expenses incurred in bringing this action; and

F.    Granting such other relief as this Court deems appropriate.

5

Date:   June 17, 2010                    Respectfully submitted,


                                         _/s/ Miranda L. Hughes_
                                         Richard K. Updegraff
                                         Miranda L. Hughes
                                         Rachel T. Rowley
                                         Brown, Winick, Graves, Gross, Baskerville
                                         & Schoenebaum P.L.C.
                                         666 Grand Avenue
                                         Suite 2000 Ruan Center
                                         Des Moines, IA 50309
                                         Telephone: (515) 242-2413
                                         Facsimile: (515) 323-8513
                                         E-mail: updegraff@brownwinick.com
                                         E-mail: hughes@brownwinick.com
                                         E-mail: rowley@brownwinick.com

                                         ATTORNEYS FOR PLAINTIFF
                                         SHF HOLDINGS, INC.

EXHIBIT "A"
to Court Officer Deed
LEGAL DESCRIPTION

Lot Three (3), including Lot "A" of Lot Three (3) of the Northeast Quarter of the Southwest
Quarter of Section Thirty-two (32), Township Ninety-six (96) North, Range Six (6) West of the
5th P. M., except the East 325 feet of said Lot Three (3), together with a right of way to be used
in common by its grantors, successors and assigns and the said grantee, its successors and
assigns, described as follows: Commencing at the Southeast corner of Lot Three (3) in the
Northeast Quarter of the Southwest Quarter of said Section  Thirty-two (32), thence
Southwesterly along the Southerly line of Lot Three (3) approximately 327 feet, thence North,
along the West line of the East 325 feet of said Lot Three (3), 30 feet, thence Northeasterly a
distance of 162 feet to a point 60 feet North of the Southerly line of said Lot Three (3), thence
Easterly parallel to the South line of said Lot Three (3), 40 feet, thence Southeasterly
approximately 132 feet to the East line of said Lot Three (3), thence South along the East line of
said Lot Three (3), 30 feet to the point of beginning;

**AND**

Lot 4 in Lot 3 in the Northeast Quarter of the Southwest Quarter of Section 32, Township 96
North, Range 6 West of the 5th P. M. according to the Plat thereof recorded Feb. 5, 2002, in Book
R, Pages 41-43, formerly described as the North 450 feet of the East 325 feet of Lot 3 in said
Northeast Quarter of the Southwest Quarter;

**AND**

Lot 1 of Lot 2 in the Northwest Quarter of the Southwest Quarter; Lot 1 of Lot 1 in the
Southwest Quarter of the Southwest Quarter; and Lot 14 of Lot 3 in the Southeast Quarter of the
Southwest Quarter; all in Section 32, Township 96 North, Range 6 West of the 5th P. M.
according to the recorded plats thereof, more especially in Book N, Pages 384 to 395 recorded
July 25, 1996;

**AND**

Lot 5, **EXCEPT** Lot 1 of Lot 5 in the Northwest Quarter of the Southwest Quarter of Section 32,
Township 96 North, Range 6 West of the 5th P. M. in the City of Postville, Allamakee County,
Iowa;

**AND**

That portion of the Southwest Quarter of the Northeast Quarter of Section 32, Township 96
North, Range 6 West of the 5th P. M.  lying to the South and West of a line running from a point
on the South line of said Southwest Quarter of the Northeast Quarter that is 70 feet East of the
Southwest corner of said Southwest Quarter of the Northeast Quarter to a point on the West line
of said Southwest Quarter of the Northeast Quarter that is 100 feet North of the Southwest corner
of said Southwest Quarter of the Northeast Quarter;

**AND**

3

Lot 2, (**EXCEPT** Lot 1 of Lot 2 and **EXCEPT** Lot 2 of Lot 2) of the Northeast Quarter of the
Southwest Quarter; Lot 1 of the Northwest Quarter of the Southwest Quarter; Lot 1 of the
Northeast Quarter of the Southwest Quarter; and Lot 1 of the Southeast Quarter of the
Southwest Quarter; all in Section 32, Township 96 North, Range 6 West of the 5th P. M.; AND
ALSO a part of Lot 4 of the Northeast Quarter of the Southwest Quarter and Lot 3 of the
Southeast Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of
the 5th P. M., Allamakee County, Iowa, described as follows: Beginning at the Northwest corner
of said Lot 4 of the Northeast Quarter of the Southwest Quarter of Section 32, said Township and
Range, thence South to the center line of the public highway known as Military Road, thence
Southeasterly along said centerline a distance of 43 feet, thence on a straight line Northerly to a
point 25 feet Easterly from place of beginning in the South line of 100 ft. right of way conveyed
to the Milwaukee and St. Paul Ry. Co., a predecessor of the C. M. St. P. & P. R. R. Co., by deed
dated 9-7-68 and recorded in the office of the Recorder of Allamakee County on 9-25-68 in
Book S of Deeds on Page 258, which said right of way line is parallel to and 50 feet Southerly
measured at right angles from the center line of the main track of the C. M. St. P. & P. R. R. Co.,
thence Westerly along said right of way line a distance of 25 feet to the place of beginning. Said
parcel lying East and adjacent to Lot 1 of the Northeast Quarter of the Southwest Quarter and
Lot 1 of the Southeast Quarter of the Southwest Quarter, Section 32, said Township and Range,
and are contained in plat thereof prepared December 23, 1901, and recorded in Book "C", Page
505 of Plats in office of the Recorder of Allamakee County, Iowa, AND ALSO Lot 3 in the
Northwest Quarter of the Southwest Quarter (**EXCEPT** Lot 1 of Lot 3) of Section 32, Township
96 North, Range 6 West of the 5th P. M., in Allamakee County, Iowa; AND ALSO Lot 1 in Lot 3
in the Southeast Quarter of the Southwest Quarter and Lot 1 in Lot 4 of the Northeast Quarter of
the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P. M.,
Allamakee County, Iowa; AND ALSO Lot 7 in Lot 3; Lot 9 in Lot 3, in the Southeast Quarter of
the Southwest Quarter; ALSO Lot 2 in Lot 4 in the Northeast Quarter of the Southwest Quarter;
all in Section 32, Township 96 North, Range 6 West of the 5th P.M. according to the recorded
plats of record, more especially the Plat in Book J, Pages 81 to 83 recorded on Sept. 6, 1978;
AND ALSO Lot 2 of Lot 4 in the Northeast Quarter of the Southwest Quarter; and Lot 2
of Lot 10 of Lot 3 in the Southeast Quarter of the Southwest Quarter of Section 32, Township 96
North, Range 6 West of the 5th P. M. according to the recorded plats thereof, more especially of
plat in Book K, Pages 148, 149 and 150, as recorded on Oct. 14, 1983;

**AND**

Lot 2 in Lot 8 in Lot 3 in the Southeast Quarter of the Southwest Quarter of Section 32,
Township 96 North, Range 6 West of the 5th P. M., in Allamakee County, Iowa, according to the
recorded plat of record;

**AND**

Lot 1 of Lot 2 and Lot 2 of Lot 2 in the NE ¼ SW ¼ and Lot 1 of Lot 3 in the NW ¼
SW ¼ all in Section 32, Township 96 North, Range 6 West of the 5th P. M. City of Postville,
Allamakee County, Iowa, as depicted on the plats of survey of TeKippe Engineering, P. C. and

4

of Mohn Surveying recorded respectively in Book S, Pages 464-471, Pages 405-406 and Pages 460-463 in the Allamakee County Iowa records;

**AND**

Lot 6 and Lot 2 of 2 in the Northwest Quarter of the Southwest Quarter, and Lot 1 of 2, Lot 1 of 2 of 1, Lot 2 of 2 of 1 in the Southwest Quarter of the Southwest Quarter, and Lot 1 of 13 of 3 in the Southeast Quarter of the Southwest Quarter all in Section 32, Township 96 North, Range 6 West of the 5th P.M., City of Postville, Allamakee County, Iowa

**AND**

Lot 1 of Lot 5, in the Northwest Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P. M. in the City of Postville, Allamakee County, Iowa.

X:\Client_S\SHF Industries LLC\COURT OFFICER DEED..Doc

|  | ***Auditor's Note*** | Parcel Numbers: |
|---|---|---|
| 03-494-1932326003 * | 03-494-1932327001 | 03-494-1932326009 * |
| 03-494-1932326002 | 03-494-1932376001 | 03-494-1932326011 |
| 03-494-1932326004 * | 03-494-1932301019 | 03-494-1932301020 |
| 03-494-1932301009 | 03-494-1932376002 | 03-295-1932301021 |
| 03-494-1932351006 * | 03-494-1932327003 * | 03-295-1932301022 |
| 03-494-1932377024 | 03-494-1932376003 | 03-295-1932351043 * |
| 03-494-1932301017 * | 03-494-1932376004 | 03-295-1932351045 |
| 03-76-1932200012 * | 03-494-1932327004 | 03-295-1932351044 |
| 03-494-1932326012 | 03-494-1932327008 | 03-295-1932377064 |
| 03-494-1932326010 | 03-494-1932376018 | 03-494-1932301018 * |
| 03-494-1932302001 | 03-494-1932376015 * |  |

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>AGRIPROCESSORS, INC.<br><br>        DEBTOR. | CASE NO.  08-02751<br><br>ORDER ON SUPPLEMENTAL MOTION FOR AN ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF THE ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, TOGETHER WITH RELATED RELIEF |

On July 15, 2009 the Trustee's Supplemental Motion for An Order Approving Sale of

Substantially All of the Assets Free and Clear of All Liens, Claims and Encumbrances, Together

with Related Relief is before the Court upon the Motion for the entry of Orders, (I) approving a

(A) Break-Up Fee or Expense Reimbursement (B) Bid Procedures for the conduct of an Auction;

(C) Fixing the date and time of the Sale Hearing; (D) Fixing manner and notice of Sale Hearing;

and (E) Fixing a Cure Claims Bar Date and establishing procedures for determining Cure Claims

with respect to the assumption and assignment of Executory Contracts; and (II) approving (A)

sale of substantially all of the assets, free and clear of all liens, claims and encumbrances, subject

to higher and better offers; and (B) Assumption and Assignment of Executory Contracts, dated

January 25, 2009 (the "Initial Motion"), filed by Joseph E. Sarachek, as Chapter 11 Trustee (the

"Trustee") of Agriprocessors, Inc. (the "Debtor"), as supplemented by a certain Supplemental

Motion for an order approving sale of substantially all of the Assets, free and clear of all liens,

interests, claims and encumbrances, to SHF Industries, LLC ("SHF" or the "Purchaser")[1],

       Dan Childers appeared on behalf of the Trustee, Joseph Sarachek and Anita L. Shodeen

---

[1] The defined term "SHF" or the "Purchaser" shall include any affiliate(s), assignee(s), designee(s) and/or successor(s) of SHF.

appeared on behalf of the Purchaser, SHF Industries, LLC.    Objecting parties and other

interested parties appeared through counsel as indicated on the record.

The Court having considered the Sale Motions and the Offer; and, in accordance with

Bankruptcy Rule 6004, requisite notice of the Sale Motions having been provided; and the Court

having entered an order on February 27, 2009 (the "Bid Procedures Order"), pursuant to which

the Court, inter alia, (i) established the date and time for the hearing to consider approval of the

sale of the assets of the Estate (the "Sale Hearing"), (ii) approved the bid procedures specified

therein (the "Bid Procedures"), and (iii) approved the form and manner of notice for the sale of

the assets of the Estate (the "Asset Sale"); and the Sale Hearing having been held before this

Court on March 24, 2009 and July 15, 2009, at which time all parties-in-interest were afforded an

opportunity to be heard; and upon all of the pleadings filed with the Court and the record of the

Sale Hearing made by the Trustee before the Court; and the objections to the relief requested in

the Sale Motions having been withdrawn, resolved, mooted, reserved or overruled by the Court;

and it appearing to the Court that the relief requested by the Sale Motions is in the best interests

of the Estate; and after due deliberation and consideration and good and sufficient cause

appearing therefore,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND**
**CONCLUSION OF LAW:[2]**

**<u>Background</u>**

1.    On November 4, 2008 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under the Bankruptcy Code.

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall
be construed as findings of fact where appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

2

2.    By Order dated November 20, 2008, the appointment of Joseph E. Sarachek, as Trustee was approved by the Bankruptcy Court.

3.    Prior to the Petition Date, the Debtor financed its operations through, among other things, loans and financial accommodations from First Bank Business Capital, Inc., f/b/a/ FB Commercial Finance, Inc. ("First Bank") pursuant to which First Bank was granted senior liens and security interests on all of the Estate's personal property (other than certain equipment located at the Debtor's meat processing facility located at 220 West Street, Postville, Iowa (the "Real Property")).  As of the Petition Date, First Bank asserted a secured claim in excess of $33 million, plus outstanding interest, fees, expenses and other charges.

4.    In addition to First Bank, MLIC Assets Holdings LLC (as successor to Agribusiness Finance Group of Metropolitan Life Insurance Company) ("MLIC") held a senior mortgage in the amount of approximately $10 million that encumbered the Real Property and certain leased equipment located at the Real Property (the "MLIC Mortgage") as of the commencement of the Chapter 11 case.

5.    During the Chapter 11 case, First Bank was authorized to provide up to $25 million of post-petition financing to Estate pursuant to orders of this Court, in accordance with the terms of a certain post-petition credit and security agreement, a promissory note and other related agreements executed in connection with post-petition financing facility (collectively, the "DIP Documents").

6.    Pursuant to the Initial Motion, the Trustee sought authority to sell the Estate's assets, subject to higher and better offers, pursuant to Section 363 of the Bankruptcy Code. Several parties submitted bids and participated in an auction (the "Auction") that was held on

3

March 23 and 24, 2009. At the conclusion of the Auction, First Bank and MLIC made credit bids for their collateral in the amount of $20 million and $6.5 million, respectively.

7. The auction sale could not be consummated under the pending credit bids, and at the Trustee's request, the Auction and Sale Hearing were adjourned to permit additional negotiations, or additional offers, to be solicited and evaluated, with any further Court action dependent upon the outcome of such actions. The Sale Hearing on March 24, 2009 was then adjourned pending the scheduling of a further hearing on the motion and the relief requested therein.

8. Following the Auction, on or about May 6, 2009, First Bank assigned all of its right title and interest in and to the DIP Documents (the "First Bank Assignment") to SHF. In addition, on or about June 5, 2009, SHF acquired, by assignment, all of MLIC's right title and interest in and to the MLIC Mortgage (the "MLIC Assignment").

9. Purchaser has advanced funds to the Estate pursuant to the DIP Documents from and after the date of the First Bank Assignment in an amount in excess of $1,800,000.

10. The Trustee notified creditors and parties-in-interest that the Auction would be reopened and concluded commencing at 1:30 p.m. on July 6, 2009 (the "Continued Auction"). At the Continued Auction SHF credit-bid to purchase substantially all of the Debtor's assets. The aggregate purchase price payable by Purchaser for the sale and transfer of the Assets pursuant to the Continued Auction is Eight and One-Half Million United States Dollars ($8,500,000 U.S.D.) The Purchase Price is to be paid through SHF's submission, and the Trustee's acceptance, of a credit bid of (i) the MLIC Secured Claim, pursuant to Section 363(k) of the Bankruptcy Code, in the aggregate amount of Six and One-Half Million United States Dollars ($6,500,000) related to the MLIC Assignment; and (ii) the First Bank Post-Petition Claim, pursuant to Section 363(k) of

4

the Bankruptcy Code, in the additional amount of Two Million United States Dollars ($2,000,000)

pursuant to the First Bank Assignment (collectively "the Offer").

11.    The only other bid presented at the Continued Auction was that of Sealed Air

Corporation for the assets subject to its security interest.  Those assets are not the subject of

Trustee's pending motion and thus, not affected by this order.

12.    SHF proposes to acquire the Assets pursuant to the Offer.  The Assets constitute

real and personal property that are subject to the liens, assignments, guarantees and security

interests related to SHF's collateral, as evidenced by (i) the DIP Documents acquired pursuant to

the First Bank Assignment and (ii) the MLIC Assignment.  (See Exhibit A).

13.    Purchaser is not acquiring and the Estate shall retain ownership of the Excluded

Assets.  The "Excluded Assets" means: (i) all items of frozen inventory of the Estate that were

produced or packaged prior to the Filing Date, (ii) Leased Equipment and equipment for which

third parties have valid, perfected first security interests, (iii) tax refund claims to the extent they

relate to the period prior to the Closing to the extent that they are subject to an allowed senior

claim held by another party as of the Closing Date, (iv) commercial tort claims relating to any

occurrence prior to the Closing, and (v) avoidance actions of the Estate under Chapter 5 of the

bankruptcy Code that are not related to the Purchaser.

### Jurisdiction

14.    This Court has jurisdiction to hear and determine the Motion pursuant to 28

U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15.    Determination of the Motion is a core proceeding under 28 U.S.C. §§

157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief requested herein are

sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

5

**Notice**

16.     Due notice of the Motion, the Bid Procedures, the Sale Hearing, and the Asset Sale has been given to all parties entitled thereto in accordance with the terms of the Bid Procedures Order and the Supplemental Motion. Such notice constitutes proper and adequate notice to all parties in interest and complies with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004. No other or further notice of the Motions or the entry of this Order is necessary.

17.     The Bid Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher and better offer to purchase the assets of the Estate. The Asset Sale process conducted by the Trustee was non-collusive, fair and reasonable, and conducted in good faith.

18.     A reasonable opportunity to object or be heard regarding the relief requested in the original Motions and the Supplement Motions has been afforded to all interested persons and entities, including: (a) all parties, if any, who are known to claim a property interest in or lien upon the Assets; (b) all governmental taxing authorities who have, or as a result of the sale of the Assets may have, Claims (as defined below), contingent or otherwise, against the Debtor's estate; (c) all potential purchasers known by the Trustee, (d) all creditors and other parties who have filed a Notice of Appearance in this case; (e) the United States Attorney for the Northern District of Iowa and (f) the United States Trustee for the Northern District of Iowa.

**Justification For Sale**

19.     The Debtor, and the Trustee on behalf of the Estate have established a sound business justification in support of the proposed sale of the Assets. Without an expeditious sale of the Assets, there will be substantial diminution in the value of the Assets to the detriment of

6

the Debtor's estate and its creditors. Such business justification includes, but is not limited to, the following factors: (i) there is a significant risk of immediate and irreparable deterioration in the value of the Assets if the Asset Sale is not consummated quickly; (ii) the Offer constitutes the highest and best bid for the Assets or any portion thereof; (iii) the consummation of the Offer presents the best opportunity to realize the value of the Assets and avoid further decline and devaluation thereof; (iv) the sale presents the best opportunity for the estate to realize the highest distributions possible to all creditors, (v) the Asset Sale pursuant to the Offer is in the public interest, as it will result in the continued operation of the Debtor's business and (vi) the contemplated Asset Sale has been negotiated in good faith, is fair and reasonable and represents an arm's length transaction.

20.     As a condition to the Asset Sale, the Purchaser requires that the Assets be sold to it free and clear of all liens, claims, encumbrances and other interests of any kind or nature, whether absolute, accrued, contingent or otherwise and whether due or to become due and whether or not asserted, known or unknown, currently existing or hereafter arising (including pre-petition and post-petition liabilities and obligations of the Debtors and its estate) and however arising (all such liens, claims, encumbrances and other interests are being referred to herein as "Claims"). The Purchaser would not consummate the Asset Sale, thus adversely affecting the Estate, if the Asset Sale were not free and clear of all such Claims.

21.     Each entity with a lien on the Assets has consented to the Asset Sale or any competing title claim is subject to bona fide dispute and is thus proper pursuant to sections 363(f)(2) and (4) of the Bankruptcy Code. Accordingly, the Debtor has satisfied one or more of the requirements of section 363(f) of the Bankruptcy Code and may sell the purchased

7

Assets free and clear of all liens, claims interests, rights of another and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

22.    Pending the closing of the sale transaction the Purchaser will permit the Debtor to utilize cash collateral in the form of post-petition accounts receivable to fund the direct and ongoing business expenses subject to the budgeting process that was included in the Final DIP Financing Order and subject to the approval of the Purchaser under the process that has been in place from and after the FB Assignment.  To the extent the Purchaser is required to advance funds for the direct business expenses prior to the closing of the sale transaction, the amounts to be advanced are subject to approval and agreement by the Purchaser and shall not exceed the amount of $800,000 through and including the anticipated closing date of August 3, 2009.  In the event closing is delayed beyond August 3rd, additional advances will be subject to agreement between Trustee and Purchaser.

23.    The transactions contemplated by the Motions, as approved and implemented by this Order, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including, without limitation, sections 363(b), (e) and (f).  The sale of the purchased Assets outside of a plan of reorganization is reasonable and appropriate under the circumstances and is a prerequisite of any plan of reorganization or liquidation of the Debtor, if any, and does not impermissibly dictate the terms of any such plan.

24.    The transfer of the purchased Assets to SHF for the consideration of its credit bid as set forth herein is in the best interest of the Debtor's estate, its creditors, and all parties-in-interest.  All of the actions taken by the Purchaser and the Trustee and, as applicable, their respective officers, directors, employees, counsel and other professionals in connection with the

8

Motion have been taken in good faith, and the Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.

## No Fraudulent Transfer

25.    The consideration provided by SHF for the purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

## Validity of Transfer

26.    The transfer of the Assets as contemplated by the Offer (i) are or will be legal, valid, and effective transfers of certain property of the Debtor's estate to the Purchaser, and (ii) vest or will vest in the Purchaser all right, title, and interest of the Debtor in and to all of the Assets free and clear of all Claims, under sections 363(f) and 105 of the Bankruptcy Code.

## No Successor Liability

27.    The transfer of the purchased Assets does not and will not subject SHF to any liability by reason of such transfer under (i) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity or (ii) any contract, understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans or employee welfare or benefit plans.  [Those of the Debtor's employees who are to be retained by SHF are being hired under new employment contracts and/or other employment arrangements to be entered into or to become effective at or after the time of the closing.  SHF is not assuming any of the Debtor's obligations to their employees.] or (iii) any outstanding tax liabilities owing by the Debtor or the estate to any

9

federal, state or local authority; or (iv) any liabilities of the Debtor or the Estate, except that

Purchaser agrees to assume and pay in the ordinary course of business the necessary reasonable

expenses for the operation of the business that remain unpaid at the time of closing. In the event

that Purchaser and Trustee cannot agree on the expenses that Purchaser will assume and pay, the

parties will submit the disputed amounts to the Court for final determination. Although this sale

is otherwise free and clear of all liens and encumbrances, Purchaser agrees that the Court retains

jurisdiction of the purchased assets to hear and resolve any motion Trustee may bring pursuant to

11 U.S.C. § 506(c). Purchaser does not admit or concede that any such action is valid, but only

agrees that the Court shall retain jurisdiction to resolve such motion, if filed.

28.    No common identity of incorporators, officers, directors or material stockholders

exists between SHF and the Debtor.

29.    The Disclosure ("Disclosure), attached as Exhibit B to this Order, which has been

sworn to under the penalty of perjury pursuant to 28 U.S.C. §1746 sets forth any and all

connections or affiliations of Purchaser, whether direct or indirect, express, implied, contingent

or unmatured, with any creditors or other parties-in-interest in the case, including, without

limitation, connections or affiliations with Debtor's principals or members of current or former

management (collectively, the "Related Parties")[3] including intention to employ or enter into

consulting agreements with such parties from and after the Closing. The Disclosure additionally

---

[3] For purposes of the Disclosure "Related Parties" includes: A.A. Rubashkin & Sons, Inc.,
Local Pride, LLC, Best Value Distributors, Inc., Best Value Food Products, LLC,
Cottonballs, LLC, Lagoon Technology LLC, Kosher Community Grocery, Nevel
Properties Corp , Amereeka Properties, LLC, The Torah Educational Program of
Northeast Iowa, Gemach Mamash Now Corp., and the immediate members (and their
spouses) of the Rubashkin family.

10

sets forth (i) whether and to what extent any Related Party will have an interest, directly or indirectly, in the Assets and/or Purchaser following the Closing; (ii) Purchaser's intention following the Closing with respect to operation of the Postville, Iowa plant and continuation of the Estate's intellectual property, including, but not limited to, trade names and all trademarks; (iii) any immigration compliance program that Purchaser has in place or that it intends to implement upon the Closing; and (iv) a statement affirming that Purchaser has not engaged in any improper conduct with actual or potential bidders for the Assets. The required disclosures of Purchaser, made in accordance with the Motion regarding the sale of the Assets, are true, correct and will continue to be the same on and after the Closing as to the Purchaser, and as to any of its successors, designees, nominees or assignees.

### Corporate Governance and Consents

30.     The Trustee, on behalf of the Debtor, should be granted, for the purposes of this order, the corporate power and authority to execute all documents and agreements as it deems necessary or appropriate to effectuate any of the transactions contemplated hereby, and the sale of the purchased Assets by the Debtor has been duly and validly authorized by all necessary corporate power and authority necessary to consummate the transactions contemplated hereby. No consents or approvals, other that this Order, are required for the Debtor to consummate such transactions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

31.     The Motion is granted in all respects.

11

32. All objections to the Motion or the relief requested therein that have not been withdrawn, mooted, reserved, waived or settled, and all reservations of rights included therein, are overruled on the merits.

33. The terms and conditions of the Offer hereby are approved in all respects, and the sale of the Assets pursuant to the Offer is hereby authorized under sections 363(b) and (f) of the Bankruptcy Code. To the extent there is a conflict between this Order and the Offer, the terms of this Order shall prevail.

34. By the issuance of this Order, the Trustee is authorized to execute and deliver, and empowered to fully perform under, consummate and implement, the Offer and all additional amendments, instruments, and documents that may be reasonably necessary, convenient or desirable to implement the Offer and to take any and all further reasonable actions as may be necessary or appropriate for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, its designee or assignee, any or all of the Assets, and to otherwise effectuate the transactions contemplated hereby.

35. Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Assets and all of the Debtor's rights, title and interest therein shall be transferred to the Purchaser at closing, free and clear of all Claims, with all such Claims released, terminated and discharged as to the Purchaser (and its successors, designees, nominees and assigns) and the Assets.

36. Except as may be expressly permitted by the immediately preceding paragraph, all persons and entities holding Claims of any kind and nature with respect to the Assets or the Debtor are hereby forever barred and permanently enjoined from asserting such Claims against the Assets and/or SHF.

12

37.     If any person or entity that has filed any mortgages, deeds of trust, financing statements, or other documents or agreements creating or establishing liens on the Assets has not delivered to the Trustee prior to the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all liens which the person or entity has with respect to the Assets, then the Purchaser hereby is authorized to execute and file statements, instruments, releases, and other documents on behalf of the person or entity with respect to such Assets.  The foregoing notwithstanding, the provisions of this Order authoring the sale and assignment of the Assets free and clear of Claims shall be self-executing and shall be effective as a determination that, on the closing date of the Asset Sale, all Claims existing prior to the date hereof have been and hereby are unconditionally released and terminated as to the Assets and that the conveyance described in this Order has been effected, and notwithstanding the failure of the Trustee, the Purchaser, or any other party to execute, file or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Offer with respect to the sale and assignment of the Assets, all liens on the Assets shall be deemed divested, void and unenforceable.  All persons or entities that are presently, or at any time hereafter prior to the transfer to the Purchaser, in possession of any of the Assets are hereby directed to surrender possession of any of the Assets to the Purchaser at closing.

38.     This Order, along with the terms and conditions set forth in the Supplemental Motion, shall be, and hereby are, binding in all respects upon the Trustee, the Debtor, their present and former employees, officers, directors, successors and assigns and any trustee that may be appointed in any case under Chapter 7 of the Bankruptcy Code to which this case may be converted, and any affected third parties and other parties-in-interest, including without

13

limitation, all persons and entities asserting any Claims against or interests in the Debtor's estate or any of the Assets sold, conveyed and assigned or to be assigned under this Order and all other persons and entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons or entities who may be required by operation of law or by the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Offer, and this Order including without limitation, documents and instruments for recording in any governmental agency or department required to transfer the Assets to the Purchaser and all licenses under the Debtor's ownership necessary for the operation of any Assets, and the county and state offices wherein termination statements under the Uniform Commercial Code are authorized to be filed.

39.     The transactions contemplated by the Offer, terms set forth herein, as well as in any exhibits attached hereto, are undertaken by SHF in "good faith" as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, no reversal or modification on appeal of the authorization provided herein to consummate the transfer of the Assets pursuant to this Order and the transactions contemplated herein, shall affect the validity of the transfer of the Assets to SHF and the transactions contemplated herein. The Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

14

40.     In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of § 363(m) of the Bankruptcy Code in closing the Asset Sale as contemplated by the Offer, at any time after the entry of this Order and, accordingly, such closing in the face of an appeal will not deprive the Purchaser of its status as a good-faith purchaser.  If the parties to the Asset Sale consummate the transactions contemplated thereby while an appeal of this Order is pending, the Purchaser shall be entitled to rely upon the protections of § 363(m) of the Bankruptcy Code, absent any stay pending appeal granted by a court of competent jurisdiction prior to such consummation.

41.     The consideration for the Assets is fair and reasonable and the Asset Sale shall not be avoided under § 363(n) of the Bankruptcy Code.

42.     The transfer of the Assets pursuant to this Order is a transfer pursuant to section 1146 of the Bankruptcy Code, and, accordingly, shall not be taxed under any law imposing a stamp tax or any similar transfer tax.  Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of the Assets, all without imposition or payment of any stamp or similar transfer tax.

43.     The Court retains exclusive jurisdiction to interpret, implement and enforce the terms and provisions of this Order upon motion by any party in interest, including, without limitation: (i) any disputes arising under or related to this Order or with respect to the Asset Sale; (ii) the validity and enforcement of all Claims; and (iii) the transfer or assignment and delivery of the Assets to SHF and SHF's peaceful use and enjoyment thereof after the closing regardless of whether a plan of reorganization or liquidation has been confirmed in this case and irrespective of the provisions of any such plan or order confirming such plan.

15

44.     SHF, in its sole discretion, is authorized, but not obligated, to employ such of the Debtor's employees on a case by case basis as SHF deems appropriate. In no event will SHF be deemed a successor employer for any purpose.

45.     Neither the Debtor nor SHF shall have liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any federal, state or local environmental law by virtue of SHF's purchase of the Assets.

46.     The purchase of the Assets by SHF will not cause SHF or any of its affiliates and subsidiaries to be deemed a successor in any respect to Debtor's business within the meaning of any federal, state, or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation (including without limitation filing requirement under any such laws, rules or regulations) or under any products liability law or doctrine with respect to Debtor's liability under such laws, rules, regulations or doctrines.

47.     The Purchaser retains it rights and shall be entitled to assert any administrative, secured and/or unsecured claims that it holds against the Debtor and the Estate together with all of the rights existing in connection with such claims under applicable law. Any and all such claims and rights are hereby reserved and may be asserted in the Debtor's bankruptcy proceeding by the Purchaser in addition to all of its rights under this Order.

48.     The provisions of this Order are non-severable and mutually dependent.

49.     In furtherance of this Order, any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; provided such modification, amendment or supplement is not material. For all purposes

16

of this Order and the sale of the Assets, any designee, assignee or nominee identified by the

Purchaser will be treated the same as SHF.

50.    The Trustee shall fully cooperate with the Purchaser to: coordinate the transition

of the business operation to SHF, its designee and/or assignee; transfer all books, records and

accounts to the Purchaser; execute all necessary documents to comply with the sale and transfer

of the Assets at closing; and expeditiously schedule a closing date that is mutually agreeable to

the parties to effectuate and consummate the terms of this Order.

51.    Notwithstanding Bankruptcy Rule 6004(h), this Order is a final order and shall be

effective and enforceable immediately upon entry.  To the extent necessary under Bankruptcy

Rules 6004(g), 9014, 9021 and 9022, the Court expressly finds that there is no just reason for

delay in the implementation of this Order and expressly directs entry of this Order.

52.    The Court reserves the right to supplement this order if it is appealed.

DATED AND ENTERED: July 20, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

**Order Prepared and Submitted by:**
**Dan Childers, Attorney for Trustee**
**Anita L. Shodeen, Attorney for Purchaser**
**And revised by the Court**

17

EXHIBIT A

"Assets" shall mean all of the Debtor's assets, wherever located, including, without limitation, as follows:

        (a)    cash and cash equivalents to the extent that the cash and cash equivalents on deposit as of the Closing do not exceed the aggregate amount of DIP Funding but excluding the funded carveout accounts for professional fees and the funded account that has been set-aside for Trustee's fees;

        (b)    any and all transferable licenses, permits, registrations and governmental authorizations (collectively, "Permits") used or required in the conduct of the Business or held in connection with the ownership of the Assets;

        (c)    all machinery, equipment, equipment parts, fixtures, vehicles, trailers, furniture, office furnishings and supplies, computer hardware, insurance policies, and all other personal property of the Estate, including any and all such personal property that is located at or in the Facility (as defined below at ¶ (q)) at the time of the Continued Auction;

        (d)    all equipment and all other personal property;

        (e)    all of the Estate's right, title and interest in real property at any location and address, including the Debtor's food processing facility, located at 220 West Street, Postville, Iowa, as more fully described at ¶ (q) herein, together with (i) all improvements thereon, (ii) any and all other real property owned by the Debtor wherever located; and (iii) all rights, benefits, privileges, easements, tenements, hereditaments and appurtenances thereon or in anywise appertaining thereto, (collectively, the "Facility"), together with all abstracts for the Facility;

        (f)    all of the Seller's sales, manufacturing, production and distribution facilities and related Assets in any location, including New York and Florida, and all Assets that are in, and/or part of, such facilities, wherever located;

        (g)    all of the Estate's direct and indirect rights and interests in and with respect to that certain water treatment plant located in Postville, Iowa, pursuant to the Designated Contracts identified at ¶ (r) herein and relating thereto;

        (h)    all trademarks, service marks, trade names, trade dress, common law, statutory and similar rights (and all goodwill associated therewith), and all registrations thereof, applications therefor, and rights of renewal, modifications or extensions anywhere in the world, intellectual property assignments, work for hire agreements, including without limitation such intellectual property set forth below and the rights to sue for past or on-going infringement or misappropriation of any of the foregoing, and to seek and retain any recoveries resulting therefrom:

| | |
|---|---|
| **Word Mark** | HEALTHY FOR YOU |
| **Goods and Services** | IC 029. US 046 G & S: Poultry, namely, chicken breast and processed chicken parts. FIRST USE: 20070806. FIRST USE IN COMMERCE: 20070806 |
| **Serial Number** | 77403562 |
| **Filing Date** | February 22, 2008 |
| **Published for Opposition** | January 27, 2009 |

| | |
|---|---|
| **Word Mark** | IOWA BEST BEEF |
| **Goods and Services** | IC 029. US 046 G & S: beef; beef products, namely, beef stew, beef stock, corned beef, roast beef, beef patties. FIRST USE: 20010800, FIRST USE IN COMMERCE: 20010800 |
| **Serial Number** | 76333347 |
| **Filing Date** | November 1, 2001 |
| **Registration Number** | 2679189 |
| **Registration Date** | January 21, 2003 |

| | |
|---|---|
| **Word Mark** | SAMSON'S KOSHER |
| **Serial Number** | 76364894 |
| **Filing Date** | January 30, 2002 |

| | |
|---|---|
| **Word Mark** | SHOR HABOR |
| **Goods and Services** | IC 029, US 046 G & S: meat and poultry products, namely, beef, lamb, veal, chicken and turkey; processed foods and deli products, namely, bologna, salami, turkey breast, turkey roll frankfurters, beef, chicken and turkey pastrami, and corned beef, FIRST USE: 19960102, FIRST USE IN COMMERCE: 19960102 |
| **Serial Number** | 75049031 |
| **Filing Date** | January 26, 1996 |
| **Published for Opposition** | November 19, 1996 |
| **Registration Number** | 2036953 |
| **Registration Date** | February 11, 1997 |

| | |
|---|---|
| **Word Mark** | AARON'S BEST |
| **Goods and Services** | IC 029. US 046 G & S: meat and poultry products, namely, beef, lamb, veal, chicken and turkey; processed foods and deli products, namely, bologna, salami, turkey breast, turkey roll frankfurters, beef, chicken and turkey pastrami, and corned beef. FIRST USE: 19940601 FIRST USE IN COMMERCE: 19940601 |
| **Serial Number** | 75025219 |
| **Filing Date** | November 28, 1995 |
| **Published for Opposition** | October 22, 1996 |

| Registration Number | 2029970 |
|---|---|
| Registration Date | January 14, 1997 |

| Word Mark | RUBASHKIN |
|---|---|
| Goods and Services | IC 029. US 046 G & S: meat and poultry products, namely, beef, lamb, veal, chicken and turkey; processed foods and deli products, namely, bologna, salami, turkey breast, turkey roll frankfurters, beef, chicken and turkey pastrami, and corned beef, FIRST USE: 19911020 FIRST USE IN COMMERCE: 19911021 |
| Serial Number | 75025218 |
| Filing Date | November 28, 1995 |
| Published for Opposition | October 29, 1996 |
| Registration Number | 2031920 |
| Registration Date | January 21, 1997 |

(i)     all books and records and accounting and other information pertaining to the Business and the Assets, including but not limited to bank records and all media in which all or any of the information, knowledge, data or records may be related or stored;

(j)     all general, financial and personnel records of the Business, including employee records, correspondence and other files and records, customer lists, customer files, credit information, advertising, promotional and sales materials, letterhead, business cards, sales data, product price lists, account histories, all software, including programs relating to any of the information listed herein or any similar information;

(k)     all raw materials, work in progress, finished products, frozen and other inventory, packaging materials and supplies used, or held for use, in the Business, except for any items of frozen inventory produced or packaged prior to the Filing Date;

(l)     all of the Estate's interests in those customer orders, whether booked or unbooked, that have not been completed or shipped as of the Closing ("Open Customer Orders"), together with any deposits paid in connection therewith (the "Customer Deposits"), but only to the extent that Purchaser notifies Seller in writing of its intent to acquire such Open Customer Orders together with the related Customer Deposits prior to the Closing;

(m)     all accounts receivable of the Debtor or the Estate as of the Closing Date (the "Accounts Receivable");

(n)     the name "Agriprocessors, Inc." and any variations thereof;

(o)     any credits, refunds (except to the extent of a tax refund that relates to the period prior to the Closing and is subject to an allowed senior lien held by another party as of the Closing Date), pre-payments and/or overpayments arising under, or in

connection with, any statements, bills or invoices issued or rendered by creditors of the
Debtor on or after the Filing Date;

      (p)    all goodwill of the Business;

      (q)    Real Estate as follows:

Lot Three (3), including Lot "A" of Lot Three (3) of the Northeast Quarter of the
Southwest Quarter of Section Thirty-two (32), Township Ninety-six (96) North, of Range
Six (6) West of the 5th P.M., except the East 325 Feet of said Lot Three (3), together with
a right of way to be used in common by its grantors, successors, and assigns and the said
grantee, its successors and assigns, described as follows: Commencing at the Southeast
corner of Lot Three (3) in the Northeast Quarter of the Southwest Quarter of said Section
Thirty-two (32), thence Southwesterly along the Southerly line of said Lot Three (3),
approximately 327 feet, thence North, along the West line of the east 325 feet of said Lot
Three (3), 30 feet, thence Northeasterly a distance of 162 feet to a point 60 feet North of
the Southerly line of said Lot Three (3), thence Easterly Parallel to the South line of said
Lot Three (3), 40 feet, thence Southeasterly approximately 132 feet, to the East line of
said Lot Three (3), thence South along the East line of said Lot Three (3), 30 feet to the
point of beginning.

      Zoned: Industrial (16 Buildings)
      Gross Acres: 18.89
      **Parcel: 000001932326003**

The North Four Hundred Fifty (450) feet of the East Three Hundred Twenty-five (325)
feet of Lot 3 in the Northeast Quarter of the Southwest Quarter of Section 32, Township
96 North, Range 6 West of the 5th P.M.

      (Described in Met Life Ins mortgage filed August 8, 2007 (2007-1966) as Lot 4 in
      3, in the Northeast Quarter of the Southwest Quarter of Section 32, Township 96
      North, Range 6 West of the 5th P.M., Allamakee County, Iowa - owned by Nevel
      Properties Corp. Nevel Properties conveyed to Agri Processors on October 9,
      2006).

      Zoned: Commercial
      Gross Acres: 3.36
      **Parcel: 000001932326004**

Lot 1 of Lot 2 in the Northwest Quarter of the Southwest Quarter; Lot 1 of Lot 1 in the
Southwest Quarter of the Southwest Quarter; and Lot 14 of Lot 3 in the Southeast
Quarter of the Southwest Quarter all in Section 32, Township 96 North, Range 6 West of
the 5th P.M., Allamakee County, Iowa, according to the recorded plats thereof, more
especially in Book N, Pages 384 to 395 recorded July 25, 1996.

      Zoned: Commercial
      Gross Acres: 7.79
      **Parcel: 000001932351006**

Lot 5, EXCEPT Lot 1 of Lot 5 in the Northwest Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M. in the City of Postville, Allamakee County, Iowa.

> Zoned: Industrial
> Gross Acres: 0.35
> Parcel: 000001932301017

That portion of the Southwest Quarter of the Northeast Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M., Allamakee County, Iowa, lying to the South and West of a line running from a point on the South line of said Southwest Quarter of the Northeast Quarter that is 70 feet East of the Southwest corner of said Southwest Quarter of the Northeast Quarter to a point on the West line of said Southwest Quarter of the Northeast Quarter that is 100 feet North of the Southwest corner of said Southeast Quarter of the Northeast Quarter.

> Zoned: Industrial
> Gross Acres: 0.08
> Parcel: 000001932200012

Lot 2, (EXCEPT Lot 1 of Lot 2 and EXCEPT Lot 2 of Lot 2) of the Northeast Quarter of the Southwest Quarter; Lot 1 of the Northwest Quarter of the Southwest Quarter; Lot 1 of the Northeast Quarter of the Southwest Quarter; and Lot 1 of the Southeast Quarter of the Southwest Quarter; all in Section 32, Township 96 North, Range 6 West of the 5th P.M.; AND ALSO a part of Lot 4 of the Northeast Quarter of the Southwest Quarter and Lot 3 of the Southeast Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M., Allamakee County, Iowa, described as follows: Beginning at the Northwest corner of said Lot 4 of the Northeast Quarter of the Southwest Quarter of Section 32, said Township and Range, thence South to the center line of the public highway known as Military Road, thence Southeasterly along said centerline a distance of 43 feet, thence on a straight line Northerly to a point 25 feet Easterly from place of beginning in the South line of 100 ft. right of way conveyed to the Milwaukee and St. Paul Ry. Co., a predecessor of the C.M. St P. & P.R.R. Co., by deed dated 9-7-68 and recorded in the office of the Recorder of Allamakee County on 9-25-68 in Book S of Deeds on Page 258, which said right of way line is parallel to and 50 feet Southerly measured at right angles from the center line of the main track of the C.M. St. P. & P.R.R. Co., thence Westerly along said right of way line a distance of 25 feet to the place of beginning. Said parcel lying East and adjacent to Lot 1 of the Northeast Quarter of the Southwest Quarter and Lot 1 of the Southeast Quarter of the Southwest Quarter, Section 32, said Township and Range, and are contained in the plat thereof prepared December 23, 1901, and recorded in Book "C", Page 505 of Plats in office of the Recorder of Allamakee County, Iowa, AND ALSO Lot 3 in the Northwest Quarter of the Southwest Quarter (EXCEPT Lot 1 of Lot 3) of Section 32, Township 96 North, Range 6 West of the 5th P.M., in Allamakee County, Iowa; AND ALSO Lot 1 in Lot 3 in the Southeast Quarter of the Southwest Quarter and Lot 1 in Lot 4 of the Northeast Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M., Allamakee County, Iowa; AND ALSO Lot 7 in Lot 3; Lot 9 in Lot 3, in the Southeast Quarter of the Southwest Quarter; ALSO Lot 2 in Lot 4 in the Northeast Quarter of the

Southwest Quarter; all in Section 32, Township 96 North, Range 6 West of the 5th P.M., according to the recorded plats of record, more especially the Plat in Book J, Pages 81 to 83 recorded on Sept. 6, 1978; AND ALSO Lot 2 of Lot 4 of Lot 4 in the Northeast Quarter of the Southwest Quarter; and Lot 2 of Lot 10 of Lot 3 in the Southeast Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M. according to the recorded plats thereof, more especially of plat in Book K, Pages 148, 149 and 150, as recorded on Oct 14, 1983, Allamakee County, Iowa.

> Zoned: Industrial (3 buildings)
> Gross Acres: 11.87
> **Parcel: 000001932327003**

Lot 2 in Lot 8 in Lot 3 in the Southeast Quarter of the Southwest Quarter of Section 32, Township 96 North, Range 6 West of the 5th P.M., Allamakee County, Iowa, according to the recorded plat of record;

> Zoned: Residential (house)
> Gross Acres: 0.89
> **Parcel: 000001932376015**

Lot 1 of 2 and Lot 2 of 2 in the NE ¼ SW ¼ and Lot 1 of 3 in the NW ¼ SW ¼ all in Section 32, Township 96 North, Range 6 West of the 5th P.M., City of Postville, Allamakee County, Iowa, as depicted on the plats of survey of TeKippe Engineering, P.C. and of Mohn Surveying recorded respectively in Book S, Pgs 464-471, Pgs 405-406 & Pgs 460-463 in the Allamakee County, Iowa records.

> Zoned: Industrial
> Gross Acres: 1.03
> **Parcel: 000001932326009**

Lot 6 and Lot 2 of 2 in the Northwest Quarter of the Southwest Quarter, and Lot 1 of 2, Lot 1 of 2 of 1, Lot 2 of 2 of 1 in the Southwest Quarter of the Southwest Quarter, and Lot 1 of 13 of 3 in the Southeast Quarter of the Southwest Quarter all in Section 32, Township 96 North, Range 6 West of the 5th P.M., City of Postville, Allamakee County, Iowa.

> Zoned: Agriculture
> Gross Acres: 20.30
> **Parcel: 000001932351043**

Lot 1 of Lot 5, in the Northwest Quarter of the Southwest Quarter, Section 32, Township 96 North, Range 6 West of the 5th P.M., City of Postville, Allamakee County, Iowa.

> Zoned: Industrial
> Gross Acres: 0.09
> **Parcel: 000001932301018**

All real property leased by Agriprocessors, Inc. to the City of Postville, Iowa, including but not limited to those agreements identified as follows;

        (i)     Real Estate Lease Agreement between AgriProcessors, Inc., as landlord, and the City of Postville, Iowa, as tenant, dated as of June 28, 2001.

        (ii)    Real Estate Lease Mechanical Plant and Anaerobic Lagoon between AgriPrcoessors, Inc., as landlord, and City of Postville, Iowa, dated as of July 28, 2001.

        (iii)   Amendment to Leases, between AgriProcessors, Inc., as landlord, and the City of Postville, Iowa, as tenant, dated July 7, 2004.

    (r)     Designated Contracts as follows:

Facility Operating Agreement between City of Postville, Iowa, the City Council and AgriProcessors, Inc,, dated as of February 25, 2002.

Wastewater User's Agreement between the City of Postville, Allamakee County, Iowa and AgriProcessors, Inc., dated July 7, 2004.

Real Estate Lease Agreement between AgriProcessors, Inc , as landlord, and the City of Postville, Iowa, as tenant, dated as of October 4, 2001

Real Estate Lease Mechanical Plant and Anaerobic Lagoon between AgriProcessors, Inc , as landlord, and City of Postville, Iowa, dated as of July 28, 2003.

Amendment to Leases, between AgriProcessors, Inc., as landlord, and the City of Postville, Iowa, as tenant, dated July 7, 2004.

Agreement between Nevel Properties Corporation as Grantor and AgriProessors, Inc. as Grantee dated January 13, 2005.

Leases of Railroad Right of Way

Anaerobic Lagoon Agreement dated February 25, 2002 between AgriProcessors, Inc., as Landlord and City of Postville, Iowa.

Agreement  dated January 13, 2005 between Nevel Properties Corporation as grantor and AgriProcessors, Inc. as grantee;

And all other rights and assets related to, or used in connection with the conduct of the Business that are subject to the loan, security interests and collateral assignments subject to the First Bank Assignment and the MLIC Assignment.

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: | Chapter 11 |
| Agriprocessors, Inc. | Bankruptcy No. 08-2751 |
| Debtor. | |

## <u>DECLARATION OF SHF INDUSTRIES, LLC</u>

I, Daniel Hirsch ("Hirsch"), hereby declares as follows pursuant to

28 U.S.C. § 1746:

I am the managing director of SHF Industries, LLC ("<u>SHF</u>").

I make this certification pursuant to the Bid Procedures filed with the

Notice of Auction Sale of Assets Free and Clear of all Liens and Encumbrances Offers

Pursuant to Section 363(b) of the Bankruptcy Code (the "<u>Notice of Sale</u>") in the

captioned Bankruptcy Case (the "<u>Bid Procedures</u>").

SHF does not have any connections or affiliations, whether direct or

indirect, express, implied, contingent or unmatured, with any creditors or other parties-in-

interest in the captioned Bankruptcy Case, including connections or affiliations with the

Related Parties (as defined in the Bid Procedures) as set forth in the Order.

SHF did engage in negotiations to purchase the obligation and claims of

Metropolitan Life Insurance Company ("<u>MLIC</u>").  On June 5, 2009, SHF acquired the

pre-petition note and collateral held by MLIC.  SHF did engage in negotiations to

purchase the note arising under the debtor-in-possession ("<u>DIP</u>") credit facility and post-

petition collateral as set forth in the Final DIP Order from First Bank Business Capital,

LLC ("First Bank").   On May 6, 2009 SHF acquired the DIP credit facility and first senior lien position on all post-petition collateral.

SHF, or an assignee of SHF (the "Purchaser") may, following the closing of the transaction contemplated by the Order entered by this Court related to the Sale of Assets pursuant to 11 USC §363 as submitted by the Trustee in the captioned Bankruptcy Case, employ, or enter into consulting agreements with, certain parties-in-interest in the captioned Bankruptcy Case that are currently employed by the Agriprocessors, Inc. (the "Debtor").

None of the Related Parties will have an ownership interest, directly or indirectly, in the Assets and/or the Purchaser following the consummation of the transaction contemplated by the Order.

SHF discloses that it may investigate and evaluate potential purchase of specific assets or interests from Related Parties that are necessary to the direct and indirect facilitation and operation of the business, including but not limited to, assets owned by Nevel Properties, Cottonballs, A.A. Rubashkin and Sons, Lagoon Technology, LLC, and Best Value.

SHF disclosures that it is investigating and evaluating the assumption purchase, and/or use with various lessors or third party creditors for assets that are related to the ongoing business operations in Postville, Iowa and other locations, which will be necessary to the direct and indirect facilitation and continued operation of the business. Assumption or Rejection of various lease agreements and executory contracts will be filed with the Court as appropriate.  Separate negotiations and agreements may be entered into by SHF and unrelated third parties to expedite the process to meet the estimated closing date without the necessity of further Court approval.

SHF intends to continue to operate the plant located in Postville, Iowa following the consummation of the transaction approved by the Court pursuant to 11 USC §363.

Pursuant to its Offer the Purchaser will acquire all of the intellectual property of the Debtor, including all trademarks and tradenames owned by the Debtor. The Purchaser may continue to use such intellectual property following the consummation of the transaction set forth in the Court Order.

The Purchaser intends to adopt, promptly following the consummation of the transaction contemplated by its Offer and the Court Order a comprehensive screening and compliance program for the retention of employees and to ensure compliance with all immigration laws and regulations.

SHF has not engaged in any improper conduct with any actual or potential bidders for the Assets (as defined the Notice of Sale).

The Offer and bid submitted by SHF in the captioned Bankruptcy Case has been duly authorized by all requisite action on behalf of SHF.

For purposes of this declaration and the purchase, or transfer, of the Assets any designee, assignee or nominee identified by the Purchaser will be bound by disclosures stated herein, the same as SHF.

I declare under penalty of perjury that the foregoing is true and correct.

Daniel Hirsch

Dated July 15 2009

**LORI HESSE** Case 10-09070 Doc 1 Filed 06/17/10 **Notice of Taxes Due &** Desc Main
**ALLAMAKEE CO TREASURER** Document **Pending Tax Sale**
110 ALLAMAKEE ST
WAUKON, IA 52172-1795

Phone: (563) 568-3793        Fax: (563) 568-6401
E-mail: treasallamak@co.allamakee.ia.us

5564025
26700

Date of Calculation: 5/04/2010

SHF INDUSTRIES LLC
5600 FIRST AVE
BROOKLYN, NY 11220

Attn:
Daniel
Hirsch

-----THIS IS MAY AMOUNT ONLY-----
TAX SALE TO BE HELD AT 10:00 A.M. ON JUNE 21, 2010 ON THE THIRD FLOOR AT THE
ALLAMAKEE COUNTY COURTHOUSE. LAST DAY TO PAY TAXES IN OUR OFFICE TO KEEP NAME
OUT OF THE NEWSPAPER PUBLICATION IS FRIDAY, MAY 14, 2010. AFTER THE SALE, IF
THE PROPERTY IS NOT REDEEMED WITHIN THE PERIOD PROVIDED IN CHAPTER 447,
THE RIGHT TO REDEEM EXPIRES AND A DEED MAY BE ISSUED.
TAXES MAY BE PAID ONLINE AT WWW.IOWATREASURERS.ORG
IF YOU HAVE ANY QUESTIONS, CONTACT US AT 563-568-3793.

| Receipt Key Parcel/Vin | Tax District Project Legal | Tax Sale Certificates | Tax 1st Half 2nd Half | MAY Interest | Drainage Interest Sec Twn Rng | Cost Acres | Totals |
|---|---|---|---|---|---|---|---|
| 2008/2009 10 12765 1 | 295 | | 275.00 275.00 | 83.00 58.00 | .00 32- 96- 6 | 4.00 20.30 | 362.00 333.00 695.00 |
| 1932351043 | LOT 6 & LOT 2 OF 2 NW SW; LOT 1 OF 2 & | | | | | | |
| 2008/2009 10 12803 1 | 494 | | 368.00 368.00 | 110.00 77.00 | .00 32- 96- 6 | 4.00 3.36 | 482.00 445.00 927.00 |
| 1932326004 | LOT 4 OF 3 NE SW | | | | | | |
| 2008/2009 10 12804 1 | 494 | | 30.00 30.00 | 9.00 6.00 | .00 32- 96- 6 | 4.00 .35 | 43.00 36.00 79.00 |
| 1932301017 | LOT 5 NW SW EX 1 OF 5 | | | | | | |
| 2008/2009 10 12805 1 | 494 | | 115,884.00 115,884.00 | 34,765.00 24,336.00 | .00 32- 96- 6 | 4.00 10.69 | 150,653.00 140,220.00 290,873.00 |
| 1932326003 | LOT A OF 3 NE SW & ROW; LOT 3 NE SW EX 220 WEST ST POSTVILLE | | | | | | |
| 2008/2009 10 12806 1 | 494 | | 44.00 44.00 | 13.00 9.00 | .00 32- 96- 6 | 4.00 1.03 | 61.00 53.00 114.00 |
| 1932326009 | LOTS 1 & 2 OF 2 NE SW; LOT 3 OF 3 NW SW 735 W TILDEN ST POSTVILLE | | | | | | |
| 2008/2009 10 12807 1 | 494 | | 3,813.00 3,813.00 | 1,144.00 801.00 | .00 32- 96- 6 | 4.00 11.87 | 4,961.00 4,614.00 9,575.00 |
| 1932327003 | LOTS 7 OF 3, 9 OF 3, 1, 1 IN 3, 2 OF 10 735 W TILDEN ST POSTVILLE | | | | | | |
| 2008/2009 10 12808 1 | 494 | | 1,093.00 1,093.00 | 328.00 230.00 | .00 32- 96- 6 | 4.00 7.79 | 1,425.00 1,323.00 2,748.00 |
| 1932351006 | LOT 1 OF 2 NW SW;LOT 1 OF 1 SW SW; LOT | | | | | | |
| 2008/2009 10 12809 1 | 494 | | 447.00 447.00 | 134.00 94.00 | .00 32- 96- 6 | 4.00 .89 | 585.00 541.00 1,126.00 |
| 1932376015 | LOT 2 IN 8 IN 3 SE SW 676 W TILDEN ST RURAL | | | | | | |
| 2009/2010 10 12811 1 | 295 | | 294.00 294.00 | 35.00 9.00 | .00 32- 96- 6 | 4.00 20.30 | 333.00 303.00 636.00 |
| 1932351043 | LOT 6 & LOT 2 OF 2 NW SW; LOT 1 OF 2 & | | | | | | |
| 2009/2010 10 12850 1 | 494 | | 371.00 371.00 | 45.00 11.00 | .00 32- 96- 6 | 4.00 3.36 | 420.00 382.00 802.00 |
| 1932326004 | LOT 4 OF 3 NE SW | | | | | | |
| 2009/2010 10 12851 1 | 494 | | 30.00 30.00 | 4.00 1.00 | .00 32- 96- 6 | 4.00 .35 | 38.00 31.00 69.00 |
| 1932301017 | LOT 5 NW SW EX 1 OF 5 | | | | | | |
| 2009/2010 10 12852 1 | 494 | | 116,719.00 116,719.00 | 14,006.00 3,502.00 | .00 32- 96- 6 | 4.00 18.89 | 130,729.00 120,221.00 250,950.00 |
| 1932326003 | LOT A OF 3 NE SW & ROW; LOT 3 NE SW EX 220 WEST ST POSTVILLE | | | | | | |
| 2009/2010 10 12853 1 | 494 | | 45.00 45.00 | 5.00 1.00 | .00 32- 96- 6 | 4.00 1.03 | 54.00 46.00 100.00 |
| 1932326009 | LOTS 1 & 2 OF 2 NE SW; LOT 1 OF 3 NW SW 735 W TILDEN ST POSTVILLE | | | | | | |

Continued...

LORI HESSE Case 10-09070    Doc 1    Filed 06/17/10  Notice of Taxes Due & Desc Main
ALLAMAKEE CO TREASURER          Document          Pending Tax Sale
110 ALLAMAKEE ST
WAUKON, IA 52172-1795

Phone: (563) 568-3793        Fax: (563) 568-6401
E-mail: treasallamak@co.allamakee.ia.us

| Delinquent OCTOBER 1, 2009 | Delinquent APRIL 1, 2010 | Entity Total |
|---|---|---|
| 443,931.73 | 126,555.00 | 570,486.73 |

5564025
26700

Date of Calculation: 5/04/2010

# Continued from previous page.

SHF INDUSTRIES LLC
5600 FIRST AVE
BROOKLYN, NY 11220

-----THIS IS MAY AMOUNT ONLY-----
TAX SALE TO BE HELD AT 10:00 A.M. ON JUNE 21, 2010 ON THE THIRD FLOOR AT THE
ALLAMAKEE COUNTY COURTHOUSE. LAST DAY TO PAY TAXES IN OUR OFFICE TO KEEP NAME
OUT OF THE NEWSPAPER PUBLICATION IS FRIDAY, MAY 14, 2010. AFTER THE SALE, IF
THE PROPERTY IS NOT REDEEMED WITHIN THE PERIOD PROVIDED IN CHAPTER 447,
THE RIGHT TO REDEEM EXPIRES AND A DEED MAY BE ISSUED.
   TAXES MAY BE PAID ONLINE AT WWW.IOWATREASURERS.ORG
   IF YOU HAVE ANY QUESTIONS, CONTACT US AT 563-568-3793.

| Receipt Key / Parcel/Vin | Tax District / Project / Legal | Tax Sale Certificates | Tax 1st Half / 2nd Half | MAY Interest | Drainage Interest / Sec Twn Rng | Cost / Acres | Totals |
|---|---|---|---|---|---|---|---|
| 2009/2010 10 12854  1 | 494 | | 3,840.00 / 3,840.00 | 461.00 / 115.00 | .00 / 32- 96- 6 | 4.00 / 11.87 | 4,305.00 / 3,955.00 / 8,260.00 |
| 1932327003 | LOTS 7 OF 3, 9 OF 3, 1, 1 IN 3, 2 OF 10 / 735 W TILDEN ST POSTVILLE | | | | | | |
| 2009/2010 10 12855  1 | 494 | | 1,104.00 / 1,104.00 | 132.00 / 33.00 | .00 / 32- 96- 6 | 4.00 / 7.79 | 1,240.00 / 1,137.00 / 2,377.00 |
| 1932351006 | LOT 1 OF 2 NW SW;LOT 1 OF 1 SW SW; LOT | | | | | | |
| 2009/2010 10 12856  1 | 494 | | 466.00 / 466.00 | 56.00 / 14.00 | .00 / 32- 96- 6 | 4.00 / .89 | 526.00 / 480.00 / 1,006.00 |
| 1932376015 | LOT 2 IN 8 IN 3 SE SW / 675 W TILDEN ST RURAL | | | | | | |
| 2009/2010 90 09140  1 | 494 | | 125.73 / .00 | 15.00 / .00 | .00 / 32- 96- 6 | 9.00 / 18.89 | 149.73 / .00 / 149.73 |
| 1932326003 | POSTVILLE UNPD UTIL/MISC / LOT A OF 3 NE SW & ROW; LOT 3 NE SW EX / 220 WEST ST POSTVILLE | | | | | | |