IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| AGRIPROCESSORS, INC., | ) | |
| | ) | |
| Debtor. | ) | Bankruptcy No. 08-2751 |
| ------------------------------------------- | | |
| SHF HOLDINGS, LLC, f/k/a | ) | |
| SHF INDUSTRIES, INC., | ) | Adversary No. 10-9070 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLAMAKEE COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER RE MOTION FOR SUMMARY JUDGMENT
## AND MOTION FOR RELIEF UNDER RULE 60(b)

These two related matters came before the Court for hearing.   Defendant

Allamakee County (the "County") moved for Summary Judgment on the Complaint

of Plaintiff SHF Holdings, LLC f/k/a SHF Industries, Inc. ("SHF").   The Complaint

seeks a declaration that the County's tax liens on real property SHF purchased from

Debtor Agriprocessors, Inc. ("Debtor") are void and unenforceable against SHF.

The County also made a Motion under Federal Rule of Civil Procedure 60(b) in the

underlying bankruptcy seeking to set aside the order allowing sale of substantially

all of Debtor's property free and clear of liens.   That motion raises similar issues to

those in this adversary and specifically asks the Court to void its July 20, 2009

Order.   These matters are core proceedings under 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF THE CASE

A July 20, 2009 Order of this Court approved the sale of Debtor's property to

SHF free and clear of all liens.   After the approved sale, the County continued to

assert a tax lien on the purchased property.   SHF filed a Complaint asking the Court

to declare the purchased property to be free and clear of all liens and claims by the

County.   The County filed a Motion to Dismiss arguing it did not receive notice of

the proposed sale free and clear of all liens and, therefore, that the Order approving

the sale did not extinguish the County's tax lien as a matter of law.

The Court denied the Motion to Dismiss, finding SHF had pled a plausible

claim that the County had actual knowledge of the sale that could satisfy due

process.   The Court also found SHF's assertion — that it was a bona fide purchaser

at the bankruptcy sale and the policy of finality protecting bona fide purchasers

trumps due process concerns — needed to be addressed on a "more complete factual

record."   The same due process and bona fide purchaser issues are again before the

Court on the County's Motion for Summary Judgment in this adversary case and the

County's Rule 60 motion in the main case.   After thorough review of the record and

the parties' written and oral arguments, the Court finds for the County on most of the

2

key issues presented.   The County has established under the undisputed factual

record that it did not have actual notice of the sale and SHF is not a good faith

purchaser.   A critical factual dispute, however, remains about the terms of the

purchase and sale between the Trustee and SHF.   That issue requires a resolution of

factual issues that go to the remedy available in these proceedings.   Thus, for the

reasons that follow, the Motion for Summary Judgment and the Motion for Relief

under Rule 60(b) cannot be granted at this time.

## BACKGROUND FACTS AND PROCEEDINGS

On November 4, 2008, Debtor filed for bankruptcy.   At that time, it is

undisputed the County had a valid tax lien on Debtor's real property.   Debtor,

however, did not list the County as a creditor on any documents related to the

bankruptcy filing.

On February 27, 2009, after Debtor's bankruptcy case had been converted

from Chapter 11 to Chapter 7, the Court approved Trustee's request to pursue a sale

of Debtor's assets free and clear of all liens under 11 U.S.C. § 363.   The Court

ordered Trustee to serve a copy of the Order and Notice on all known creditors who

had a lien against Debtor's assets.   Because Debtor had not listed the County as a

creditor in its bankruptcy, the Order and Notice were not sent to the County.   It is

3

thus undisputed the County did not receive formal written notice of the sale.   No

other creditors objected to the Trustee's request to pursue sale free and clear of liens.

Trustee held an auction of the Estate's assets on March 23-24, 2009.   Two

credit bids were received from the largest secured creditors, but the auction sale

could not be consummated.   At the Trustee's request, the auction and sale hearing

was adjourned to permit additional negotiations and offers.   The two credit-bidding

parties eventually assigned their interests to SHF.   SHF then made a successful

offer to the Trustee to purchase the property.

Before closing, however, SHF learned of the outstanding tax liability to the

County.   SHF claims it received assurances from the Trustee that the Trustee would

take care of or be responsible for the debt.   Trustee, however, does not appear to

share that view.

On June 15, 2009, the County pursued collection on its tax lien by offering ten

parcels of land owned by Debtor – and later acquired by SHF – at a tax sale.   The

undisputed facts show the County was unaware of the bankruptcy sale as it pursued

and eventually sold some of the property at the tax sale.

On July 20, 2009, this Court (unaware of the tax sale) entered an Order

approving the bankruptcy sale of substantially all of the Debtor's property to SHF,

free and clear of liens.   The Court stated what appeared to be true on the record

4

before it — that all listed lienholders had received notice of the sale.   As noted,

however, it later came to light that the County did not receive formal written notice

of the sale because it was not listed in any of Debtor's bankruptcy filings.

Some time passed with little or no activity alerting either the County or SHF

to the full scope of the problem.   On April 19, 2010, SHF redeemed the two parcels

sold by the County at the tax sale.   The County asserts it first became aware of the

bankruptcy sale and avoidance of the tax lien on April 21, 2010.   On that date,

SHF's attorney informed the County Treasurer that SHF would not be paying the

taxes relating to the County's tax lien.   This gave rise to the proceedings here.

## PROCEDURAL HISTORY AND ARGUMENTS OF THE PARTIES

On June 17, 2010, SHF filed this adversary seeking a declaration that it

purchased the property free and clear of the County's tax lien.   On July 16, 2010,

the County filed its Rule 60(b) Motion in the bankruptcy case asking the Court to set

aside the July 20, 2009 Order approving the sale free and clear of all liens.   The

County also filed, that same day, a Motion to Dismiss SHF's adversary complaint.

The crux of the County's position in both cases is that the lack of proper notice of the

sale free and clear of liens voided the validity of the Court's Order approving the

sale as to the County.

5

The Court has chosen to hear these closely related matters together.   The Court denied the County's Motion to Dismiss the adversary and deferred ruling on the County's Rule 60(b) Motion in the main case.   Following the completion of discovery on both matters, the County filed this Motion for Summary Judgment in the adversary.   The County also requested the Rule 60(b) to be heard with the summary judgment.   The Motion for Summary Judgment and Rule 60(b) Motion have been fully briefed and argued and are ripe for review.

The County argues that its due process rights were violated and the July 20, 2009 Order is void and has no effect as to the County.   SHF argues that the County's due process rights were not violated because it had actual knowledge of the sale.   SHF also argues that even if the sale violated the County's due process rights, SHF is a bona fide purchaser whose interest in finality trumps the due process rights of the County.   In making that argument, SHF contends that the Trustee offered specific assurances that the sale would be free and clear of the tax lien and/or the Trustee would take care of the taxes.

The County, in reply, argues SHF is not a bona fide purchaser under the undisputed record because it knew of the tax debt before the sale.   The County also argues that, even if SHF could arguably be a bona fide purchaser, such status would not trump the County's due process rights.

6

# CONCLUSIONS OF LAW

## A. Summary Judgment Standard

SHF moved for summary judgment in its adversary complaint seeking

declaratory relief.    Summary judgment is governed by Federal Rule of Bankruptcy

Procedure 7056.    Rule 7056 applies Federal Rule of Civil Procedure 56 in

adversary proceedings.    Rule 56 states, in relevant part, that: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."    Fed. R.

Civ. P. 56(a).    The granting of "[s]ummary judgment is proper if, after viewing the

evidence and drawing all reasonable inferences in the light most favorable to the

nonmovant, no genuine issues of material fact exist and the movant is entitled to

judgment as a matter of law."    Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th

Cir. 2007).    Summary judgment is "appropriate when only questions of law are

involved."    Timmerman v. Eich, No. C 09-3072, 2011 WL 4018079, at *6 (N.D.

Iowa Sep. 12, 2011) (citing Cremona v. R.S. Bacon Veneer Co., 433 F.3d 617, 620

(8th Cir. 2006)).

The burden of showing there are no genuine issues of material fact belongs to

the moving party.    Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465,

468 (8th Cir. 2004).    "Once the movant has supported the motion, the non-moving

party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'"   In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)).

"A 'material' fact is one 'that might affect the outcome of the suit under the governing law . . . .'"   Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party on the question.   Anderson, 477 U.S. at 252.   Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact.   Matsushita Elec. Indus. Co. v. Zenith Radio, Corp., 475 U.S. 574, 586 (1986).

To determine whether summary judgment is appropriate, the Court looks to the law governing the merits of the dispute to determine what "material facts" are at issue.

**B.   Rule 60(b) Standard**

The County claims it should be relieved from this Court's July 20, 2009 Order in the main bankruptcy case — Order Approving Sale of Substantially All of the Assets, Free and Clear of All Liens, Claims, and Encumbrances — under Rule

8

60(b).  "On motion and just terms, the court may relieve a party or its legal

representative from a final judgment, order, or proceeding . . . ."  Fed. R. Civ. P.

60(b).   The County argues it is entitled to relief under Rule 60(b) on three grounds:

"(1) mistake, inadvertence, surprise, or excusable neglect"; "(4) the judgment is

void"; and "(6) any other reason that justifies relief."   Id.   The County does not ask

the Court to void the entire sale.   Instead, the County wants the Court to obligate

SHF to pay the outstanding taxes.   SHF claims that if Rule 60(b) relief is proper, the

appropriate remedy is to void the entire sale.

Rule 60(b) motions are appropriate under limited circumstances:

> Federal Rule of Civil Procedure 60(b) provides that the court
> may relieve a party from a final judgment for, among other reasons,
> mistake, inadvertence, surprise, or excusable neglect.  A Rule 60(b)
> motion is committed to the sound discretion of the trial court, and we
> review the district court's decision to grant or deny the motion only for
> an abuse of discretion.   Abuse of discretion occurs if the district court
> rests its conclusion on clearly erroneous factual findings or if its
> decision relies on erroneous legal conclusions.   Although we have said
> that Rule 60(b) motions are disfavored, we also recognize that they
> serve a useful, proper and necessary purpose in maintaining the
> integrity of the trial process, and a trial court will be reversed where an
> abuse of discretion occurs.

MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 755 (8th Cir. 1996) (internal

citations and quotations omitted).   See also Baker v. John Morrell & Co., 266 F.

Supp. 2d 909, 920 (N.D. Iowa 2003).   "'Under Rule 60(b), the movant must

demonstrate exceptional circumstances to justify relief.'"   Baker, 266 F. Supp. 2d at

9

920 (quoting <u>Brooks v. Ferguson-Florissant Sch. Dist.</u>, 113 F.3d 903, 904 (8th Cir.

1997)).   "Exceptional circumstances exist where the judgment bars adequate

redress."   <u>Id.</u>   (citing <u>Atkinson v. Prudential Prop. Co.</u>, 43 F.3d 367, 371 (8th Cir.

1994)).

## C.   The County's Knowledge

### 1.  11 U.S.C. § 363(b)(1) and Rule 6004(a) Notice

Section 363 of the Bankruptcy Code provides for a sale free and clear of liens.

"The trustee, after notice and a hearing, may use, sell, or lease . . . property of the

estate . . . ." 11 U.S.C. § 363(b)(1).   Bankruptcy Rule 6004(a) provides that

"[n]otice of a proposed . . . sale of property . . . not in the ordinary course of business

shall be given pursuant to Rule 2002(a)(2) . . . ."   Fed. R. Bankr. P. 6004(a).

Bankruptcy Rule 6004(c) is also applicable, requiring that "'parties who have liens

or other interests in the property to be sold' must be served with a motion for

authority to sell in the manner provided under Rule 7004 for service of a summons

and complaint . . . ."   <u>SHF Holdings</u>, No. 08-02751/10-09070, 2010 WL 4342060,

at *3 (Bankr. N.D. Iowa Oct. 27, 2010) (quoting Fed. R. Bankr. P. 6004(c)).   It is

undisputed that the County was not listed as a lienholder in the bankruptcy and did

not receive the notice required by Rule 6004(a) or 11 U.S.C. § 363(b)(1).

10

### 2. Due Process

The County argues that the lack of formal notice constitutes a due process

violation which, as a matter of law, prevents this Court from granting SHF's request

that the tax lien be declared unenforceable as to SHF.   The County also argues that

due process requires the Court under Rule 60(b) to revise its Order allowing the sale

free and clear of all liens.   SHF disagrees, arguing that the County's actual

knowledge of the bankruptcy proceedings and sale overcome any due process

concerns.   The Court has found that due process can be satisfied by certain forms of

actual notice and laid out the governing law in its Ruling on the County's Motion to

Dismiss:

> In a bankruptcy case decided last term, the Supreme Court noted the
> important distinction between depriving a party of a right granted by a
> procedural rule and depriving that party of the constitutional right to
> due process.  United Student Aid Funds, Inc. v. Espinosa, ___ U.S.
> ___, 130 S. Ct. 1367, 1378, 176 L.Ed.2d 158 (2010) (holding that the
> receipt of actual notice of the contents of a Chapter 13 plan satisfied a
> creditor's due process rights despite debtor's failure to file an adversary
> proceeding for a determination that undue hardship existed for the
> purpose of discharging debtor's student loans under the plan).   In
> Espinosa, the Supreme Court held that "failure to serve [a creditor with
> a] summons and complaint the Bankruptcy Rules require for
> commencement of an adversary proceeding" did not violate due
> process requirements where the creditor had "**actual notice** of the filing
> and contents of [debtor's] plan" to deal with creditor's debt. Espinosa,
> 130 S. Ct. at 1379 (emphasis added).   The Eighth Circuit has often
> applied a similar rule.   "[A] person cannot complain about the
> constitutionality of the method used to provide notice when he or she
> has received actual notice (assuming it is timely), for he or she has

suffered no harm." <u>Nunley v. Dep't of Justice</u>, 425 F.3d 1132, 1139 (8th Cir. 2005). <u>See also</u> <u>Samuels v. Merriweather</u>, 94 F.3d 1163, 1167 (8th Cir. 1996) ("Because the Samuels had actual notice that the city intended to condemn the building there was no procedural due process violation."); <u>Hroch v. City of Omaha</u>, 4 F.3d 693, 696 (8th Cir. 1992) (same).

<u>Espinosa</u> makes clear the longstanding rule that a violation of a procedural rule does not always establish a due process violation. Whether a party receives constitutional due process is instead determined by an analysis of all the applicable circumstances:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. However, if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

<u>Mullane v. Central Hanover Bank & Trust</u>, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted).

[D]ue process is a highly flexible concept [and] the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." <u>Walters v. National Ass'n of Radiation Survivors</u>, 473 U.S. 305, 322, 105 S. Ct. 3180, 87 L.Ed.2d 220 (1985). In keeping with this flexible, circumstance-based approach, courts (as noted above) have found that actual notice or actual knowledge of proceedings can satisfy due process requirements. <u>Espinosa</u>, 130 S. Ct. at 1379; <u>Samuels</u>, 94 F.3d at 1167.

<u>SHF Holdings</u>, 2010 WL 4342060, at *4.

Lack of notice required by statute or procedural rule, however, is still relevant

to a due process analysis:

> Procedural rules violations, while not dispositive on their face of due
> process issues, are still very important to the analysis.   As the Eighth
> Circuit has specifically stated: "[w]here the Bankruptcy Code and
> Bankruptcy Rules specify the notice required prior to entry of an order,
> due process generally entitles a party to receive the notice specified
> before an order binding the party will be afforded preclusive effect."
> Baldwin v. Credit Based Asset Servicing and Securitization, 516 F.3d
> 734, 737 (8th Cir. 2008) (discussing whether notice was proper before
> dismissing a Chapter 13 case, or if not, whether the error was harmless,
> and concluding that more fact-finding was necessary to determine
> whether the notice complied with due process).

Id. at *5.

Other courts have faced situations in which a party claiming an important

property interest did not receive proper notice.   These "courts have balanced the

level of actual knowledge involved against the procedural notice requirements that

were not followed."   Id.   "[I]n Christopher v. Kendavis Holding Co., 249 F.3d 383

(5th Cir. 2001), the Fifth Circuit addressed whether a retiree's actual knowledge . . .

was sufficient to satisfy due process where the retiree had no formal notice of the

discharge of his claim."   SHF Holdings, 2010 WL 4342060, at *5 (quoting

Kendavis).   The court in Kendavis noted:

> A potential litigant who knows about a legal proceeding usually has
> adequate notice that his rights could be jeopardized and should take
> steps to protect his rights.   Nevertheless, an ordinarily valid form of

13

notice may fail to satisfy due process concerns because of the circumstances of the defendant . . . .We therefore assess the sufficiency of notice against the backdrop of the factual circumstances of each case.

249 F.3d at 387 (citations omitted).

This contrasts with the holdings of the First Circuit, which has "found a more limited role for evidence of actual notice or actual knowledge in the analysis." SHF Holdings, 2010 WL 4342060, at *5 (citing Arch Wireless, Inc. v. Nationwide Paging (In re Arch Wireless), 534 F.3d 76 (1st Cir. 2008)). The First Circuit considered a Chapter 11 debtor's "contempt motion against a creditor that had no formal notice of the case or the debtor's discharge and continued to attempt to collect its debt after the discharge injunction." Id. The court rejected the debtor's claim that actual knowledge disposed of the need for statutory notice, stating:

"[T]he fact that the creditor may . . . be generally aware of the pending reorganization, does not itself impose upon him an affirmative burden to intervene in that matter and present his claim . . . . [T]he creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred."

Arch Wireless, Inc., 534 F.3d at 83 (quoting In re Intaco Puerto Rico, 494 F.2d 94, 99 (1st Cir. 1974)).

The First Circuit also held, however, that "a case could arise in which, although the required notices were not sent, the creditor in fact had actual knowledge 'not merely of the general pendency of the . . . reorganization, but of each particular

14

development therein to which formal notice would be required.'" Id. at 86 n.7

(quoting Intaco, 494 F.2d at 99 n.11).   In this instance, the First Circuit stated it may

conclude that due process rights were not violated.   Id. at 87.

The distinction between general and specific knowledge has been highlighted

by other bankruptcy courts:

> Although due process is a highly flexible concept, it is not so
> malleable as to be satisfied merely when an interested party is notified
> only that action is contemplated against the property in which it has an
> interest.   At the very least, the interested party must be reasonably
> apprised that the contemplated action is directed against **its** interest.

In re Marcus Hook Dev. Park, Inc., 143 B.R. 648, 660 (Bankr. W.D. Pa. 1992)

(emphasis in original).

Both parties have relied on the analysis of In re Metzger, 346 B.R. 806

(Bankr. N.D. Cal. 2006), in support of their respective positions.   Metzger can be

summarized as follows:

> [T]he Bankruptcy Court had approved a sale free and clear of liens for
> land that was subject to an affordable housing development restriction
> imposed by the affected county.   The county was not given any formal
> notice of the hearing at which the sale was approved.   The county
> challenged the sale free and clear of liens, arguing that the court's
> approval of the sale had no effect on the county's development
> restriction.   The purchaser contended that despite of the lack of formal
> notice, the county had actual knowledge of the bankruptcy case and had
> been told that the land was going to be sold free and clear of liens.   The
> purchaser argued the county's actual knowledge of the sale satisfied due
> process and the county was bound by the order approving it.

15

> After completing discovery and conducting oral argument, the parties presented the due process issue to the court.  The court made factual determinations regarding the county's interest and the nature of the county's knowledge regarding the specifics of the sale.   The court acknowledged that "[i]n theory, actual knowledge of a hearing may, in some circumstances, be sufficient to satisfy due process concerns."  The court held, however, that it was "aware of no case supporting [the] inquiry notice theory in a chapter 11 case involving a sale free and clear of liens."   The court concluded that inquiry notice did not exist "in the context of the facts before this Court" and found that the county was not bound by the previous order approving the sale.

SHF Holdings, 2010 WL 4342060, at *6 (citing and quoting Metzger) (internal citations omitted).

This Court concluded in the ruling on the Motion to Dismiss that actual notice can satisfy due process requirements in the absence of sufficient statutory notice. Id. at *8. This Court also concluded, and reiterates here, that the undisputed record reveals that the County did not receive any such "good and specific actual notice" that could satisfy due process.   Id.

SHF attempts to show the County had actual notice of the Trustee's proposed sale based primarily on news reports and general knowledge within the Postville community.   There is evidence in the record that establishes some people employed by the County knew generally that Agriprocessors filed for bankruptcy.   SHF's primary support is the affidavit and deposition of County Treasurer Lori Hesse. Hesse stated that:

16

> It is possible that at some point I may have been aware that
> Agriprocessors was involved in a bankruptcy hearing from the general
> information known in the community.   It is not uncommon for there to
> be information shared in the community about various businesses and
> their financial strength or weakness or that they have filed bankruptcy.

(Hesse Aff. ¶ 9, Aug. 25, 2010.)   Hesse further stated that she "may have at

some time become aware of the bankruptcy in general," and she admits she

might have heard the "word 'bankruptcy' . . . in a few news programs."

(Hesse Dep. 32: 10-11, June 29, 2011.)   Hesse also, however, testified that at

"no time" did she "have knowledge that any sale of Agriprocessors' property

was to be free and clear of liens."   (Hesse Aff. ¶ 10, Aug. 25, 2010.)

SHF also points to two County Supervisors that stated they may have had

some knowledge of the bankruptcy.   Neither of them, however, recalled knowing

about a sale free and clear of the County's lien.   SHF also points out there was local

and regional news coverage of the bankruptcy.   SHF, however, provided no

testimony or evidence that any County employee recalled ever reading or seeing that

there would be a sale free and clear of the County's tax lien — or even a sale free and

clear of liens or interests.

SHF additionally submitted evidence that it believes shows that the Board of

Supervisors discussed the Agriprocessors bankruptcy on multiple occasions.   The

depositions and supporting evidence make clear, however, that the County minutes

17

are referring to other bankruptcies in Allamakee County, not the bankruptcy in question.   Even assuming the notes refer to the Agriprocessors bankruptcy, SHF does not point to any discussions about a sale free and clear of County liens.

SHF focuses on facts suggesting the County had knowledge of the bankruptcy – not the relevant issue, the sale free and clear.   While some County employees may have known that Debtor filed for bankruptcy, this "does not of itself impose upon [the creditor] an affirmative burden to intervene in that matter and present [the creditor's] claim."   Arch Wireless, 534 F.3d at 83.   The County's witnesses all testified they did not know there would be a sale of the Agriprocessors land free and clear of the County's tax lien.   "In a sale free and clear of liens, a creditor has an important property interest and is entitled to clear notice before its interest can be eliminated."   SHF Holdings, 2010 WL 4342060, at *8.   "'[A]dequate notice' and 'opportunity to participate' includes providing interested, 'known' parties not only with **generalized** notice of the event in question, but also the **specifics** of it. . . ."   In re Rounds, 229 B.R. 758, 765 (Bankr. W.D. Ark. 1999) (emphasis in original) (citing IRS v. Hairopoulous (In re Hairopoulos), 118 F.3d 1240, 1244 (8th Cir. 1997)).

The Court understands SHF's skepticism of the claims by several County employees that they did not know Agriprocessors filed for bankruptcy.   Yet, on a

18

motion for summary judgment, "it takes more than allegations to place credibility in issue." <u>Lundeen v. Cordner</u>, 356 F.2d 169, 170 (8th Cir. 1966).   <u>See also</u> <u>Nat'l. Bank of Commerce v. Dow Chem. Co.</u>, 165 F.3d 602, 610 (8th Cir. 1999) ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."); <u>Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22</u>, 473 F.3d 1271, 1278 (10th Cir. 2007) ("In opposing a motion for summary judgment, speculation or hunches amidst rumor and innuendo will not suffice.") (internal citations and quotations omitted); <u>Raney v. Vinson Guard Serv., Inc.</u>, 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided, though, based on hunches unsupported with significant probative evidence.").   This is particularly true in this case, where statutory requirements provided a procedure for notice.   As noted, the lack of formal notice is not dispositive where there are allegations of actual notice, but it still remains a valid and important consideration.   The Bankruptcy Code and Rules both contemplate a formal written notice.   It is undisputed none was given.   SHF has failed to show specific actual notice sufficient to take the place of the formal notice.   Its suspicions about what the County employees knew about the bankruptcy filing is not enough to create a factual issue for trial.

SHF makes a similar argument when pointing to inconsistency between Hesse's statement that it is possible that she was aware of the bankruptcy at some point, and the statement that she was not aware of the bankruptcy until April 2010. SHF argues that this inconsistency is sufficient to call into question the veracity of Hesse's testimony as a whole, thereby creating an issue of material fact about how much knowledge she possessed.   Even assuming the two statements contradict, and viewing the evidence in the light most favorable to SHF, the County only creates a factual issue about whether or not Hesse had knowledge of the bankruptcy.   This is insufficient, however, to even intend that Hesse had good and specific notice of a sale free and clear of the County's lien.

SHF has failed to provide any evidence that the County had "very good and specific actual notice" that there would be a sale free and clear of all liens.   SHF Holdings, 2010 WL 4342060, at *8.   Accordingly, there is no genuine issue of material fact as to whether the County had knowledge of the sale free and clear of its interest.   The Court will grant summary judgment in the County's favor on this issue.   The County lacked actual notice or knowledge of the sale, and thus its due process rights were violated.

## D. Good-Faith Purchaser

SHF next argues that even if the County did not have actual knowledge of the sale, SHF still prevails because it was a good-faith or bona-fide purchaser. Section 363(m) of the Bankruptcy Code recognizes and protects the rights of a good faith purchaser, even where the lienholder's due process rights are violated by a sale.[1] Section 363(m) states: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease . . . to an entity that purchased or leased such property in good faith . . . ." 11 U.S.C. § 363(m).

This section has been read by courts to reflect the strong interest in "finality" when such sales occur. "This 'finality rule' prevents courts from overturning a sale to a good faith purchaser in the absence of a stay." In re Miell, No. 10-09043, 2010 WL 2743016, at *2 (Bankr. N.D. Iowa July 9, 2010) (quoting In re Rodriguez, 258 F.3d 757, 759 (8th Cir. 2001)). The rule of finality has gained traction based on the belief that, absent such a principle, there would be significant damage to the confidence of purchasers. See Veltman v. Whetzal, 93 F.3d 517, 521 n.4 (8th Cir. 1996) ("[O]nce a sale becomes final . . . the sale cannot be reviewed on appeal . . . .

---

[1] In the current action, the sale happened "under" 363(f) – that is, this was a sale free and clear of all liens – but the language of § 363(f) and the case law indicates that 363(f) sales are a subsection of § 363(b) and (c) sales. See In re Polaroid Corp., 611 F.3d 438, 440 (8th Cir. 2010).

Complementary policies support this conclusion . . . [including] the importance of encouraging finality in bankruptcy sales by protecting good-faith purchasers . . . ."). See also In re Alan Gable Oil Dev. Co., No. 91-1526, 1992 WL 329419, at *4 (4th Cir. Nov. 12, 1992) ("[T]hough section 363(m) does not in the strictest sense apply to Schneider's rule 60(b) motion, the policy favoring protection of good faith purchasers of estate property does."); Matter of Bleaufontaine, Inc., 634 F.2d 1383, 1389 n.10 (5th Cir. 1981) ("If deference were not paid to the policy of speedy and final bankruptcy sales, potential buyers would not even consider purchasing any bankrupt's property. As a result, the bankrupt's creditors would be the ones most injured thereby. The public has a keen interest in protecting such creditors."); Matter of Cada Inv., Inc., 664 F.2d 1158, 1162 (9th Cir. 1981) ("[A]lthough the policy of finality normally protects confirmed sales from orders to set aside, sales are properly set aside when compelling equities outweigh the interests in finality."); In re MMH Auto. Grp., LLC, 385 B.R. 347, 360 (Bankr. S.D. Fla. 2008) ("There is no question that confidence in the finality of bankruptcy sales is of critical importance, and there are only limited circumstances in which a bankruptcy sale should be set aside.").

There is a split of authority on whether the interest of a good-faith purchaser can, in limited circumstances, be superior to the interest of a lienholder that did not receive notice of a sale.   The Seventh Circuit has held that a good-faith/bona-fide

purchaser's rights prevail in some instances under section 363(m) when a sale is

collaterally attacked under Rule 60(b).    Matter of Edwards, 962 F.2d 641, 644 (7th

Cir. 1992).    For the Seventh Circuit, lack of notice to a lienholder is not dispositive

in all situations.    Id.    Instead, the Seventh Circuit held that the courts are "left with

the practical question, in what circumstances can a civil judgment be set aside

without limit of time and without regard to the harm to innocent third parties?"    Id.

(citing In re Center Wholesale, Inc., 759 F.2d 1440, 1447-48 (9th Cir. 1985)).    The

Seventh Circuit concluded, "[t]he answer requires a consideration of competing

interests rather than a formula."    Id.    "The strong policy of finality . . . embodied in

363(m) provides . . . strong support for the principle that a bona fide purchaser at a

bankruptcy sale gets good title, even if the section does not of its own force preclude

collateral attack on such sales."    Id.

Other cases reject the notion that a good faith purchaser can ever take property

free and clear of a lien when the lienholder received deficient notice.    See In re

Ex-Cel Concrete Co, Inc., 178 B.R. 198 (B.A.P. 9th Cir. 1995).    The court there

found the lack of notice to be a:

> per se . . . jurisdictional defect sufficient to result in a void order. [And
> decided to] respectfully disagree with Edwards to the extent that it
> allows considerations, such as the exigent needs of the bankruptcy
> system or the innocence or good faith of third parties involved in
> bankruptcy sales, to justify departures from due process standards in
> adjudicating property rights.

23

Id. at 205.   The court feared that the Edwards court was mistaken in prioritizing

good faith purchaser status over constitutional protections of property rights.   Id.

This is a difficult question that puts two fundamental notions – due process

and finality – at odds.   Even Edwards notes as much: "To take away a person's

property – and a lien is property – without compensation or even notice is pretty

shocking, but we have property rights on both sides of the equation here . . . ."

Edwards, 962 F.2d at 645.

The facts of this case place in direct opposition the competing property rights

noted in Edwards.   The County possessed a valid tax lien on the property in

question.   Since purchasing the property, however, SHF has also obtained property

rights, invested significant resources in the Agriprocessors facility, and operated the

facility for an extended period of time.

In addition to competing property rights, there are also competing equities.

The Ninth Circuit B.A.P.'s reasoning in Ex-Cel Concrete acknowledges and protects

lienholders who have valuable property rights removed without any notice or chance

to be heard.   The Seventh Circuit in Edwards considers whether it is fair to permit a

court to void an order years after a sale to the detriment of a good-faith purchaser.

"The policy [of finality] would mean rather little if years after the sale a secured

24

creditor could undo it by showing that through some slip-up he hadn't got notice of it."  Edwards, 962 F.2d at 645.

The Court, however, need not resolve this difficult legal issue, unless SHF first shows it is, in fact, a good-faith purchaser.   The rationale of Edwards applies only to good faith purchases.   At summary judgment, the standard is whether SHF has raised a genuine issue of material fact on this key issue.   The Court thus first looks to what SHF must prove to qualify as a good-faith purchaser.

> The relevant test is twofold: a good faith purchaser is one who buys in good faith and for value.   Lack of good faith is shown by misconduct surrounding the sale.   Typically, the requisite misconduct necessary to establish a lack of good faith involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

In re Burgess, 246 B.R. 352, 355-56 (B.A.P. 8th Cir. 2000) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

The County argues that SHF cannot raise a factual issue about whether it was a good-faith purchaser because SHF knew about the County's tax lien prior to the purchase.   The County argues that a necessary condition of good faith purchaser status is a lack of knowledge of the competing claim.   Iowa law provides that: "The rule is well established that to be a good faith purchaser for value, one must show that he made the purchase before he had notice of the claim of another, express or implied."   Moser v. Thorp Sales Corp., 312 N.W.2d 881, 886 (Iowa 1981) (quoting

25

Janssen v. N. Iowa Conference Pensions Inc. of Methodist Church, 166 N.W.2d 901,

908 (Iowa 1969)).    While there is some uncertainty about whether state law or

federal bankruptcy law applies, see In re Vallecito Gas, LLC, Adv. No. 10-3039,

2011 WL 2970970, at *35 (Bankr. N.D. Tex. July 19, 2011), the Court need not

resolve that issue.    Federal bankruptcy cases appear to use the same test, and hold

that the purchaser's knowledge of competing claims defeats good-faith-purchaser

status.    See Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998) ("'A 'good

faith' purchaser is one who buys property . . . **without knowledge of adverse**

**claims.'** . . .    The Trustee cannot defeat the claim by draping [the purchaser] in the

garment of a good faith purchaser when he clearly had notice and knowledge . . . .")

(quoting In re Mark Bell Furn. Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993));

Willemain v. Kivits, 764 F.2d 1019, 1023 (4th Cir. 1985) (A good-faith purchaser is

"one who purchases assets . . . without notice of adverse claims."); In re Borders

Group, Inc., 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) ("[A] 'good faith purchaser'

is 'one who buys property . . . for value, without knowledge of adverse claims.'")

(quoting 3 Collier on Bankruptcy 363.11); In re Borriello, 329 B.R. 367, 381 (Bankr.

E.D.N.Y. 2005) ("Because the defendant had actual knowledge of the mortgage, the

Property post-transfer remained subject to the mortgage . . . ."); In re Russ, No.

4-87-2332, 1996 WL 56208, at *3 (Bankr. D. Minn. Feb. 7, 1996) (The party was a

26

good-faith purchaser based on lack of knowledge of the adverse claims.); In re Cable

One CATV, 169 B.R. 488, 492 (Bankr. D.N.H. 1994) (A good-faith purchaser

cannot have knowledge of adverse claims.).

Here, there is no genuine issue of material fact on the question of SHF's

knowledge of the County's rights before the sale.   SHF admits it received actual

notice of the Debtor's unpaid taxes to the County at least one day before sale.   SHF

acknowledges it even had extended discussions with the Trustee about how the

County's rights would be handled.   This admitted actual knowledge of the County's

rights defeats SHF's claim that it is or was a good-faith purchaser under section

363(m), state law, or bankruptcy law.

**E. Remedy Available**

The conclusion that SHF is not a bona-fide purchaser means it is not entitled

to the protections of Edwards, which held that in the difficult situation where both

parties face the prospect of having a significant compromise of their property rights,

the interest in finality dictates that the loss falls on the party whose rights were

compromised in the court-approved sale.   The fact SHF does not get the benefit of

the Edwards holding, (even if the Court ultimately adopted it, which it has not), does

not mean SHF's difficult position gets no special consideration under or protection

from the law.   As the case dealing with this issue recognize — the question of

27

available remedies here is difficult, and requires a flexible and practical standard tied

to the particular facts of the case.   See Compak Companies, LLC v. Johnson, 415

B.R. 334, 344 (N.D. Ill. 2009) (determining a "narrow remedy" is appropriate when

dealing with a bankruptcy purchase "free and clear of interests" notwithstanding an

interest-holder's lack of notice); In re MMH Automotive Group, LLC, 385 B.R. at

359 (outlining three general approaches used by courts when faced with the

consequences of failure to give notice of a sale free and clear to an interested party).

The parties certainly have requested different remedies.   In the adversary

case, SHF has asked for a declaration that the County's lien has been extinguished, is

unenforcible, and that SHF does not ultimately owe for the tax.   The County, in its

Rule 60(b) motion asks the Court to set aside the order approving sale free and clear

and for a special limitation on their relief.   The County specifically requests the

order be set aside only to the extent that it extinguished the County's lien and that it

be left intact on the sale itself.   In other words, the County requests that the sale still

be approved under the Order, but that the part extinguishing its tax lien be removed.

In response, SHF has argued that in the event the tax lien has not been extinguished,

it remains the responsibility of the estate, not SHF.   Additionally, this Court has

several times raised the question whether it can force SHF to accept a sale as the

County requests — that has different terms than SHF agreed to.   This essentially

raises the issue of whether relief from the taxes was a critical part of the

consideration for the sale, and if so, whether the sale can be forced on SHF without

it.   The difficult remedy issues are now squarely before the Court.

The Court does not believe the remedy issue can be decided at summary

judgment.   There are factual disputes that remain on key issues.   These disputes

revolve around the terms of the sale agreement and whether the treatment of the

taxes formed a critical part of the consideration.   Additionally, whether the Trustee

agreed to take the responsibility for the taxes on behalf of the bankruptcy estate, and

SHF relied on that fact, became issues in the summary judgment briefing and

argument.

If the facts establish SHF did not actually rely on this alleged representation of

the Trustee (that the estate would take care of the taxes), there is less impediment to

placing the responsibility for the taxes on SHF.   Such facts — if established —

would also be evidence that the tax issue was not critical consideration upon which

the deal rose or fell.   If the facts show that SHF knew of the tax issue, that SHF

might be responsible for the taxes, and that SHF decided to go forward with the sale

anyway, then the fact the sale was ultimately approved "free and clear" of the lien

becomes much less weighty.   However, the case is at summary judgment and this is

not the time to "weigh" the facts.   The question is whether there are genuine issues

of material fact on these key issues.    The Court finds there are genuine issues of fact

on these issues.

On one side, the County provides factual support to show SHF knew of the tax

problem and chose to proceed.    The County provides testimony from the attorney

for Trustee.    The attorney claims he had a conversation with SHF "sometime before

the sale was closed."    (Childers Dep. 13:1-2, July 21, 2011.)    This was "[t]he only

time" that he "can ever remember discussing property taxes with anybody at SHF."

(Id. at 12:17-18.)    SHF expressed "disgruntlement . . . that the tax bill was as large

as it turned out to be."    (Id. at 13:9-11.)    It was the attorney's recollection that SHF

wanted the Estate to pay the taxes.    On the other side, Trustee's attorney noted that

he "indicat[ed] that the trustee would not be paying [the tax bill] because the trustee

had no money to pay it."    (Id. at 13:11-13.)    Trustee's attorney believes this

conversation occurred after the parties received the order approving the sale and

before closing.    The County notes it is undisputed SHF proceeded to close on the

sale with full knowledge the Trustee/estate would not be paying the taxes.

The County also provides testimony from Trustee's consultant, Marc Ross,

who created a spreadsheet listing liabilities "that SHF would have to assume upon

purchasing the assets."    (Ross Dep. 8:10-12, July 21, 2011.)    The list included the

outstanding tax liability.    Ross prepared the list before the Court Order approving

30

the sale.   Ross is unaware, however, of whether SHF formally agreed to assume the debts listed on the spreadsheet.

Finally, the County points out that SHF and Trustee negotiated a draft Asset Purchase Agreement ("APA") that addressed the tax liabilities of the various parties. The APA contained a provision dealing with taxes.   The County contends there was no reason for the draft APA to include the tax provision or discuss past due property taxes if the Trustee had simply agreed to take care of them.   The APA was never consummated.

SHF presented evidence it did not believe it would be responsible for the taxes under the sale free and clear.   SHF provides the Affidavit of Daniel Hirsch, managing member of SHF, who testified that Trustee told him that "the only taxes that SHF would have to pay were payroll taxes."   (Hirsch Aff. ¶ 5, Sept. 1, 2011.) Hirsch further claims that "[f]rom the outset of SHF's communications with the Trustee and throughout the time that SHF entered its credit bid offer for the Assets, it was clearly understood by Trustee that SHF's purchase of Agriprocessors' assets would be free and clear of all liens, claims, and encumbrances, including taxes." (Hirsch Aff. ¶ 13, Sept. 1, 2011.)   SHF believes that means that any taxes due would be paid by the Trustee.

31

SHF also submitted an affidavit from one of its attorneys, Shalom Jacob, to establish this point further.   He asserts that it is his "firm recollection that the Trustee did not request SHF to pay these taxes."   (Jacob Aff. ¶ 19, Sept. 1, 2011.) SHF also claims that the Supplemental Sale Motion approved by the Court led it to believe that the sale would be free of all liens and encumbrances.   Trustee's attorney signed the Motion requesting the Supplemental Sale Order.   SHF believes this shows, or at least raises the inference, that Trustee would pay any taxes and satisfy encumbrances that exist.

The Court finds in particular that there are genuine issues of fact on the question of whether the Trustee agreed to assume the responsibility for paying the taxes.   While SHF knew of the County's lien, it has presented evidence creating an issue of fact on whether it was responsible for paying the taxes.   The County certainly has presented evidence contradicting these factual claims.   "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts'" are for the fact-finder at trial — not for judges at the summary judgment stage.   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

This also leaves open the question of how critical the tax issue was to the ultimate deal.   This issue has not been sufficiently addressed in the factual record. The Court believes this to be a factor to consider in determining whether it is appropriate in this case to — as the County requests — set aside only a term or two of the Court's order approving the sale.

Viewing the facts in the light most favorable to SHF, this Court cannot decide at this stage of the proceedings the proper responsibility for the tax lien or the appropriate remedy to be applied on the specific facts of this case.   The Court also will not rule on the Rule (60)(b) motion at this time.   The Court cannot determine if relief is appropriate until a determination is made as to who was responsible for the taxes at the time of sale.   Therefore, the Court withholds judgment on how to treat the sale in the event that relief is appropriate.

## F. Tax Sale Redemption and Judicial Estoppal

The County also has argued that SHF's request to declare the County's tax lien void and unenforcible is barred by SHF's own actions.   The County claims that SHF's redemption of two parcels of property after the tax sale served as an admission that County taxes remained due and were not void.   The County claims that this admission thereby effectively waives any challenge to the legitimacy of the tax lien.

33

The County also claims that SHF's redemption of the two lots sold at the tax sale and failure to take action to address the unpaid taxes before closing should estop SHF from avoiding the tax lien.   The County claims SHF effectively admitted the taxes were due when it redeemed the parcels and this is inconsistent with SHF's current position that no taxes are owed to the County.

The Court need not resolve these issues.   The Court already has determined that the County's lien was not extinguished by the order approving sale free and clear.   The only issue remaining is the proper remedy.   To the extent these arguments affect those issues, they will be taken up at trial.

## G. Validity of the 363(f) Sale

As an alternative basis for relief, the County argues that the sale to SHF is void because the sale was not conducted pursuant to one of the five permissible grounds listed in 11 U.S.C. § 363(f).   "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, **only if** " the sale satisfies one of the five grounds in § 563(f).   11 U.S.C. § 363(f) (emphasis added).   Again, the Court need not resolve this issue.   It goes to the issue of whether the County's tax lien was extinguished — which has been resolved.   It does not deal with the remaining issue of remedy.

34

**WHEREFORE**, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

**FURTHER**, Plaintiff's Motion to Set Aside Order under Rule 60(b) will be heard and decided with the final disposition of this adversary case.

Dated and Entered: January 17, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

35